CHARLES P. MUSTARD, Administrator,

*vs.*

UNION NATIONAL BANK.

Cumberland.    Opinion December 23, 1893.

*Banks.    Stockholder.    Interest.    Dividends.*

A stockholder in a bank is not entitled to interest from the bank either on ordinary dividends declared on his shares, or on money due him from a reduction by the bank of its capital stock, for a period during which the bank was prevented from paying him the same by attachments of his stock in suits pending in court between him and other parties; although the money thus belonging to him was during such time mingled by the bank with its general assets, the bank being ready and willing to pay over the same but for the attachments and having on hand all the time a balance of money sufficient for the purpose.

ON EXCEPTIONS.

This was an action of assumpsit tried in the Superior Court, for Cumberland County, without the intervention of a jury and submitted for decision upon an agreed statement of facts, the material parts of which appear in the opinion of the court.

The plaintiff took exceptions to the rulings in matters of law by the presiding justice.

*Weston Thompson*, for plaintiff.

If, instead of attaching shares, McManus had waited till defendant's capital was legally reduced and then held up the money on trustee process, the situation would have been, as to the question of interest, the same as now. In either case, the attachments would have been defendant's only excuse for non-payment of the money. Question is whether its use of the sub-

ject matter pending the attachment, made defendant liable for interest. Method of attachment and form of writ are immaterial. Defendant debtor became a technical trustee.

When the corporation reduced half of its stock to cash it no longer had the consent of the stockholder to use the cash for its own benefit. He was not bound to intrust that fund to the management of the directors.

Counsel cited and commented on : *Farmers, &c., Bank* v. *King*, 57 Pa. St. 202, 98 Am. Dec. 215 ; *Cotton* v. *Sharpstein*, 14 Wis. 226, 80 Am. Dec. 774 ; *Chapin* v. *Conn. River R. R. Co.* 16 Gray, 69 ; *Dalton* v. *Dalton*, 51 Maine, 170 ; *Chesterfield Mf'g Co.* v. *Dehon*, 7 Pick. 9 ; *Bank* v. *Ins. Co.* 104 U. S. 693 ; *Denston* v. *Perkins*, 2 Pick. 86 ; *Merrill* v. *Bank*, 19 Pick. 32 ; 1 Sto. Eq. § 465 ; 2 *Id.* § 1261, 1277 ; *Stearns* v. *Brown*, 1 Pick. 530 ; *Freeman* v. *Freeman*, 142 Mass. 98, 105-6 ; *Fridge* v. *State*, 3 Gill & Johns. 103, 20 Am. Dec. 463 ; *Docker* v. *Somes*, 2 My. & K. 655 ; *Palmer* v. *Mitchell*, *Id.* 672, n. ; *Heathcote* v. *Hulme*, 1 Jac. & W. 122 ; *Bobb* v. *Bobb*, 4 West, 381 ; *Abbott* v. *Stinchfield*, 71 Maine, 213 ; *Adams* v. *Cordis*, 8 Pick. 260 ; *Norris* v. *Hall*, 18 Maine, 332 ; *Smith* v. *Flanders*, 9 Mass. 322, and cases ; *Newson* v. *Douglass*, 7 Harr. & J. 417, 16 Am. Dec. 317 ; *Blodgett* v. *Gardiner*, 45 Maine, 542.

*Barrett Potter*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

PETERS, C. J. The agreed statement, with matters not material to the present question eliminated therefrom, exhibits the following facts : The plaintiff's intestate, George F. Mustard, was the owner of stock in the defendant bank amounting, at par value, to two thousand dollars, which stood attached in two suits against him in favor of Patrick McManus. During the pendency of the suits in court the bank reduced its stock, by proceedings which became effectual on July 20, 1882, from $100,000 to $50,000, by which act the intestate would have

been entitled to receive one thousand dollars as his share of his retired capital but for the attachment upon it. Nothing seems to have occurred between the parties after this to alter the situation until January 29, 1891, when a release signed by McManus, dated January 28, 1891, purporting to discharge his attachments so far as covering the one thousand dollars and any dividends due upon the stock, was presented to the bank by the plaintiff and the sums due him from the bank demanded. The bank refused payment at that time, having doubt about doing so because the suits were still in court and also because McManus had died before the release was presented to them. But those questions are not now of any importance more than as an introduction to the later controversy which has arisen between the parties.

The question now is, whether in an action instituted by the plaintiff to recover this money of the bank, on May 20, 1891, interest is recoverable on such sum from July 20, 1882, when the capital was retired, or only from January 29, 1891, when the plaintiff's proportion of the same was demanded. There being $140.00 due as dividends, the judge presiding ruled as a matter of law that the plaintiff was entitled to recover $1140.00 and interest thereon from the date of such demand. The plaintiff, however, claims to recover, in addition to this allowance, interest from July 20, 1882, to January 29, 1891, on $850.00, that portion of the plaintiff's retired capital which, it is admitted, was merged in July, 1882, with the general assets of the bank.

The parties further agree that the bank never made any promise to pay interest on any portion of the funds, and that it has no custom of paying interest on funds in its possession; that it has at all times since the reduction of its capital stock had on hand a balance of money sufficient to pay the $1000.00 and the accrued dividends; and that it has been always willing and ready to pay the same to the plaintiff or his intestate but for the existence of the attachments.

The plaintiff contends that the bank, as to these funds, did not stand in the condition of an ordinary debtor, but became a stake-holder or trustee for the owner of them, and that having

received the profits and benefit of the funds is liable for interest on the same.

We do not feel satisfied to apply the rule invoked by the plaintiff. There was no promise of interest in any way, and no disposition to withhold the funds except for self-protection. There was more money at all times on hand and unemployed than the sum due the plaintiff, in readiness for appropriation on the debt. It would be an unheard of claim to charge a bank with a liability to pay interest on deposits or declared dividends when there is no promise to do so, nor any fault on the part of the bank. And the funds in question were in no more favorable condition for the owner of them than ordinary deposits or dividends. All uncalled for deposits and dividends held by any bank, or at any rate, the bulk of them, become mingled in the moneys and investments of the bank, and that is one source of its legitimate business profits.

If any interest is recoverable by the plaintiff it must be at the legal rate of six per cent, while there is no evidence that the bank earned so much on its stock or assets, but the aspect of the facts could rather indicate the contrary. The plaintiff's claim would seem less just and equitable perhaps, if the detention of his funds had been for nine days or weeks or months even instead of for nine years, but the principle would be the same in either case. The long-continued delay was not caused in any degree by the bank.

The cases in Massachusetts, where this same question has repeatedly arisen, are averse to the plaintiff's claim. *Oriental Bank* v. *Tremont Ins. Co.* 4 Met. 1 ; *Huntress* v. *Burbank*, 111 Mass. 213 ; *Smith* v. *Flanders*, 129 Mass. 322. And we do not perceive that our own cases favor the claim. In *Norris* v. *Hall*, 18 Maine, 332, the debt in the trustee's hands was on its face running upon interest. *Blodgett* v. *Gardiner*, 45 Maine, 542, was a similar case. And in *Abbott* v. *Stinchfield*, 71 Maine, 213, the trustee, an attorney at law, had collected funds for his client and deposited them in a savings bank upon interest for his client's benefit.

*Exceptions overruled.*