OPPENHEIMER v. CARABAYA RUBBER & NAVIGATION CO.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. MOTIONS (§ 65*)—ORDER—CONCLUSIVENESS.
Though an order recite that it was entered on motion of defendant's attorneys, defendant will not be precluded thereby if it appears on its face, when read in conjunction with notice of motion, that such recital does not indicate that defendant was satisfied with the order.
[Ed. Note.—For other cases, see Motions, Cent. Dig. § 89; Dec. Dig. § 65.*]

2. TRIAL (§ 11*)—TRIAL OF SEPARATE ISSUES—EQUITABLE ISSUES.
Where a counterclaim raised an equitable issue as a defense to the action, it was proper to send the equitable issue to the Special Term for trial.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 28–30; Dec. Dig. § 11.*]

3. ACTION (§ 69*)—STAY—PENDENCY OF OTHER ACTION.
In a suit by the trustee of a bankrupt against a corporation on a note given by it and held by the bankrupt, it interposed the equitable defense that the bankrupt had been its treasurer and took an active and influential part in its management, and was trusted with the duty of selling certain properties of the corporation, and that through an agent he bought them for himself and another, who organized an English corporation to take over the properties, defendant securing to himself a half interest therein. Defendant had meanwhile begun an action in a chancery court in England against the English corporation, the bankrupt and plaintiff as trustee, seeking to recover from them the amount due from the English corporation to the bankrupt. *Held*, that the refusal of plaintiff's motion that the action be stayed until the decision of the action pending in England, was error, and it should be granted, with the proviso that, if the trial of the English action be unreasonably delayed, plaintiff might vacate the stay, and take an order for trial.
[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 744–751; Dec. Dig. § 69.*]

Dowling, J., dissenting.

Appeal from Special Term, New York County.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William M. Bennett, for appellant.
Abram I. Elkus, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. This action by the trustee in bankruptcy of Frank Squier is brought to recover the amount of a promissory note executed by the defendant corporation to the order of itself, and indorsed by it. This note came into the possession of plaintiff among other assets of said Squier, who died soon after the appointment of his trustee in bankruptcy. The defense to the note consists of what are apparently merely formal denials designed to put plaintiff to his proofs. The defendant, however, sets up in various forms an equitable counterclaim by way of set-off to whatever sum may be found to be due upon the note.

The facts upon which these counterclaims rest are alleged to be the following: That from the time of the organization of defendant in August, 1904, and until July 14, 1908, the said Frank Squier was treasurer of defendant and took an active, leading and influential part in its management, and was implicitly trusted by said defendant, its stockholders, and officers. That said defendant was the owner of and entitled to certain properties in the Republic of Peru, consisting, inter alia, of certain rubber forest concessions. That in 1905 defendant and its stockholders and directors determined to sell said properties, and to that end the defendant in 1906 created said Squier its attorney in fact to sell said properties. That in the year 1906 one Turner, without disclosing for whom he was acting, proposed to purchase said properties for £1,400 sterling in cash, and a like amount in stock of a company thereafter to be formed. That defendant accepted this proposition not knowing, what was the fact, that said purchase was made by said Turner as the agent of and for the benefit of said Squier. That thereupon said Squier, still being treasurer of defendant, made an agreement in England with one Sir George Newnes for the creation of an English company to take over the properties of defendant, together with other properties, and that any profits, after paying the agreed purchase price for said properties, should be divided equally between said Sir George Newnes and said Squier. It is further alleged that this agreement was carried out, that a corporation known as the "Inambari Para Rubber Estates, Limited," was organized, which undertook to pay to defendant the price at which said defendant had agreed to sell its properties to said Turner, and to divide a large sum in cash and stock between the said Sir George Newnes and said Squier. It is said that a considerable part of this profit, alleged to be upwards of $48,000, has already been paid to said Squier, and that more remains due. The contention, of course, is that Squier, having been intrusted with the sale of the property as defendant's agent, could not lawfully become the secret purchaser thereof, and that, having done so, defendant is entitled to the benefit of his operations. This action was begun in July, 1909, and in December, 1910, defendant was permitted to set up the above-mentioned equitable counterclaim in an amended answer. In the meantime, on March 4, 1910, the defendant began an action in the High Court of Justice, Chancery Division, in England, against the Inambari Company, Sir George Newnes, Albert Edward Turner (Squier's agent), and plaintiff as trustees in bankruptcy of said Squier. The action is founded upon

the state of facts above stated, and seeks to recover from the Inambari Company the amount still unpaid due from said company to said Squier or his estate. In this action the plaintiff has interposed an answer, claiming to be entitled to receive whatever may still be due to said Squier or his estate from said Inambari Company. It is manifest that the issues thus raised in the English action are identical with those sought to be raised by the counterclaims in the present action or some of them, with this difference, however: That in the English action the whole question as to the claims of defendant against Squier's estate can be determined, whereas in the present action only so much thereof as would serve to offset the plaintiff's claim can be the matter of determination. So the judgment in the English action will be determinative of this action so far as concerns the equitable counterclaim above referred to, while a judgment in this action will not be determinative of the English action. The plaintiff's motion was that the issues raised by the equitable counterclaim be first tried at Special Term, leaving the issues raised by the complaint and denials to be afterwards tried at Trial Term, and that the trial of any of the issues in this action be stayed for one year or until the prior trial and decision of the action pending in England. The order from which the defendant now appeals directs that all the issues in this action be tried at Special Term, and denies the application for a stay pending the trial of the English action.

[1] Although this order recites that it was entered on motion of the defendant's attorneys, it is evident upon its face, when read in conjunction with the notice of motion, that such recital does not indicate that defendant was satisfied with the order, and it will not therefore be held to be precluded thereby. Davis v. Fogarty, 134 App. Div. 500, 120 N. Y. Supp. 39.

[2] It was entirely proper to send the equitable issues to the Special Term for trial. Goss v. Goss & Co., 126 App. Div. 748, 111 N. Y. Supp. 115; Cohen v. Am. Surety Co., 129 App. Div. 166–176, 113 N. Y. Supp. 375; Code Civ. Proc. §§ 966–973. The defendant insists, however, that it was erroneous to transfer the issues raised by the complaint and denials to the Special Term for trial. Strictly speaking, this contention is right, although in the present case it appears to be unlikely that any question will arise for determination by a jury.

A more serious question arises out of the appeal to the discretion of the court to stay the trial of any of the issues in this action until after the trial and decision of the English action. If that action was pending in a country in which the system of jurisprudence was not so closely analogous to our own, we should not be disposed to entertain the application at all, but, as it is, we may be assured that the decision in the English court of equity will proceed upon the same rules and principles that obtain in the courts of this state. Under such circumstances, it is not a complete answer to the application that one of the actions is pending in another jurisdiction. Allentown Foundry & Mach. Works v. Loretz, 16 App. Div. 72, 44 N. Y. Supp. 689. It is an important circumstance, and one entitled to much weight,

that Squier's estate is insolvent, and it is of no moment that the claim sought to be set off arises out of a different transaction and is unliquidated. Central Appalachian Co. v. Buchanan, 90 Fed. 454, 33 C. C. A. 598; Assets Realization Company v. City of Buffalo, 118 App. Div. 571, 103 N. Y. Supp. 153. It is also an important consideration in the present case that the defendant's entire claim cannot be enforced in this action, and that most of the transactions involved in the controversy took place in England, and that most of the witnesses reside there. It is true, as is pointed out by the respondent, that this action was begun first, but the English action was begun before the counterclaim was pleaded in this action, and consequently the issues, which are identical in both actions, were first tendered in the action in England. It is not made clear that to stay this action will embarrass the trustee in finally winding up the estate, since that cannot be done until after the trial and decision of the English action, which can be reached for trial, as appears by the affidavits, nearly as soon as this case could be reached on the Special Term calendar.

[3] On the whole, under the peculiar circumstances of this case, we think that the ends of justice will be best served if the order appealed from be reversed with $10 costs and disbursements, and the defendant's motion be granted in its entirety, subject, however, to a proviso to be inserted in the order that if, for any reason, the trial of the English action be unreasonably delayed, the plaintiff may move to vacate the stay, and take an order for the trial of this action.

The order appealed from will therefore be reversed, with $10 costs and disbursements, and the motion granted as hereinbefore indicated.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur. DOWLING, J., dissents.

---

OPPENHEIMER v. CARABAYA RUBBER & NAVIGATION CO.

(Supreme Court, Appellate Division, First Department.     June, 1911.)

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William M. Bennett, for appellant.
Abram I. Elkus, for respondent.

