[Civ. No. 11655. First Dist., Div. One. Nov. 30, 1942.]

IDONAH SLADE PERKINS, Respondent, v. BENGUET CONSOLIDATED MINING COMPANY (a Corporation), Appellant.

W. H. Lawrence, Alfred Sutro, Francis R. Kirkham and Pillsbury, Madison & Sutro for Appellant.

Sullivan, Roche & Johnson, Caulfield & Keil, Theodore J. Roche and James Farraher for Respondent.

PETERS, P. J.—Plaintiff, Idonah Slade Perkins, brought this action against defendant, Benquet Consolidated Mining Company, to recover from defendant the dividends declared by defendant on certain shares of its capital stock alleged by plaintiff to be her property. Defendant's basic defense to this action is that, under Philippine law, which it claims controls, Eugene Arthur Perkins, husband of plaintiff, is entitled to such dividends. The trial court ruled, in accordance with plaintiff's contentions, that the issue as to who had title to the stock, as to who was entitled to the dividends, and as to what law governed, had been settled by a final judgment of the New York courts by which it was determined, in an action between plaintiff and her husband, that plaintiff was the owner of the stock here in question and entitled to all dividends declared thereon. (*Perkins* v. *Guaranty Trust Co. of New York,* 274 N.Y. 250 [8 N.E.2d 849].) The trial court held that the New York judgment was res judicata, that defendant, who was not a party to that action, was conclusively bound thereby, and that under the full faith and credit clause the courts of this state must give effect thereto. It therefore entered judgment for plaintiff in the total sum of $412,273.88, which includes the amount of all cash dividends declared by defendant on the block of stock in question between March 31, 1930, and March 31, 1940, plus interest from the dates declared. The judgment further provided, pursuant to stipulation, that certain designated interveners, to whom plaintiff was indebted and who claimed liens upon her interest in the stock, dividends and present cause of action, should be paid by defendant sums totaling $121,359.77, to be deducted from the amount for which plaintiff was given judgment. Defendant appeals from that judgment.

Defendant is a *sociedad anonima* of the Philippine Islands with its principal office in Manila. Such an organization has no exact counterpart in our law. It is a separate legal entity, possessing some of the characteristics of a joint stock company and some of a partnership, but most closely approximates a corporation. For the purposes of this opinion it will be considered and treated as a corporation.

## SUMMARY OF THE FACTS

The facts leading up to the present action are not substantially in dispute and are as follows: Plaintiff is the wife of Eugene Arthur Perkins, whom she married in Manila in 1914 and with whom she lived in that city until late in 1929. In that year the parties separated, and since that date have not lived together. Prior to her marriage, plaintiff had been a resident of Spokane, Washington, while Mr. Perkins had resided in New York prior to going to the Philippines in 1908. Mr. Perkins is a member of The Philippine Bar and is general counsel of defendant company. He is not a party to the present action.

The stock which forms the basis of the present action was acquired after the marriage of the parties and prior to 1930. In 1930, and for years prior thereto, the books of defendant company showed plaintiff as the stockholder of record of the 24,000 shares. In November, 1934, a 200 per cent stock dividend was declared by defendant, and a 100 per cent stock dividend was declared in November, 1939. Thus, when judgment was entered in the present action in 1940, the number of shares involved was 144,000. From March 31, 1930, to March 31, 1940, dividends totaling $334,-800 were declared by defendant on this block of stock. From 1930 to 1937 defendant paid $270,425.20 of these dividends to Mr. Perkins or his transferees, taking back from Mr. Perkins and his law partner, several agreements by which they contracted to indemnify the company if it was held liable to plaintiff for such dividends. The dividends declared since 1937, totaling $64,374.80, have been impounded by the defendant. The trial court gave judgment to plaintiff for the total amount of such dividends, plus interest.

As already pointed out, on January 1, 1930, and for years prior thereto, the 24,000 shares in question were registered in the name of plaintiff and were represented by seven certificates in her name. Until the dispute arose in 1930 between plaintiff and her husband all dividends on this stock were paid to plaintiff by checks payable to her account in Spokane, Washington.

Early in 1930 a dispute arose between plaintiff and her husband over the right to the dividends from this stock. There is no doubt that from almost the beginning of this dispute, and prior to any litigation over the stock, the defendant company knew of the conflicting claims of the parties to these dividends. In the first half of 1930 plaintiff and

her husband each wrote two letters to defendant claiming the right to the dividend that had been declared in March of 1930. Plaintiff contended that the stock was her separate property. Mr. Perkins then contended, and defendant now contends, that the stock was marital property; that under Philippine law he was the manager of all conjugal property; that he was therefore entitled to the dividends; that even if the shares were the separate property of Mrs. Perkins under Philippine law, which he contended (and defendant now contends) was controlling, cash and stock dividends belonged to the conjugal partnership, of which he was the manager. Mr. Perkins was insistent that the March, 1930, dividend check should be delivered to him. At Mr. Perkins' request the check for this dividend was delivered by the corporation to him. The check was made out to Mrs. Perkins' Spokane bank account so that Mr. Perkins was unable to cash it. He, therefore, demanded of Judge Hausermann, managing officer of defendant, that he be given a check he could cash. Hausermann gave Mr. Perkins a new check for such dividend made out in the name of Mrs. Perkins that could be cashed in the Philippines. Hausermann knew that the check was to be indorsed and cashed by Mr. Perkins, and so intended. On the date this first check was delivered to Mr. Perkins (May 26, 1930), he delivered to defendant an indemnity agreement by the terms of which he agreed to indemnify defendant from any or all lawful claims which Mrs. Perkins might make by reason of defendant acceding to Mr. Perkins' demands. On the same day there was delivered to defendant a similar indemnity agreement signed by De Witt, Perkins' law partner and co-general counsel for defendant.

From this time until April 11, 1934, defendant paid all dividend checks on the stock to Mr. Perkins by check drawn to the order of Mrs. Perkins, intending and knowing that Mr. Perkins intended to and did cash them. During the year 1930 Mrs. Perkins served three written notices on defendant setting forth the basis of her claims, and demanding that all dividends, those declared and those to be declared, be delivered to her. Defendant refused to accede to these demands.

On June 30, 1930, Mrs. Perkins commenced an action against her husband (Civ. No. 37517) in the Philippine courts for a judicial separation, liquidation of the conjugal partnership, and other relief. In her complaint she specifically

alleged that the 24,000 shares were property of the conjugal partnership. By his answer Mr. Perkins likewise alleged that the shares were conjugal property, and by cross-complaint he averred that Mrs. Perkins was withholding the shares, and he prayed that she be compelled to account to him for such property.

During July, 1930, Mrs. Perkins was induced by her husband to discharge her attorney and to withdraw her action against her husband. To this end she signed, on July 25, 1930, certain documents. Among them was a petition in action No. 37517 requesting that she be permitted to withdraw her complaint and consent to judgment being entered in favor of her husband on his cross-complaint, an assignment of the shares to Mr. Perkins, and a letter to defendant directing the transfer of the shares to Mr. Perkins upon production of the outstanding certificates. Mr. Perkins immediately presented these documents to the defendant and demanded a transfer of the shares, but defendant refused to make the transfer without surrender of the certificates. The certificates had been sent by Mrs. Perkins to a New York trust company for safekeeping.

On August 4, 1930, judgment was entered in Civ. No. 37517 in accordance with the prayer of Mr. Perkins' cross-complaint. On the same day Mr. Perkins instituted contempt proceedings against his wife for an accounting, she having refused to deliver the certificates to him. On September 29, 1930, Mrs. Perkins filed her answer in the contempt proceedings alleging that the stock certificates were not conjugal property, that her husband was a citizen of New York, that the stock was her separate property, and that under Philippine law the New York law was applicable to such personal property. While the contempt proceeding was pending, and on January 15, 1931, Mrs. Perkins filed in Civ. No. 37517 a motion to vacate the judgment of August 4, 1930, on the ground that it had been taken by her mistake, inadvertence, surprise and excusable neglect, and had been induced by the fraud of her husband. This proceeding is authorized by a Philippine statute practically identical with section 473 of the California Code of Civil Procedure. On March 6, 1931, the Philippine court denied the petition, and on March 30, 1931, Mrs. Perkins was adjudged guilty of contempt and ordered imprisoned until she complied with the order contained in the judgment of August 4, 1930. Thereafter, Mrs. Perkins

appealed to the Supreme Court of the Philippines from the decree refusing to set aside the judgment and from the decree adjudging her in contempt. Both decrees were affirmed in a single decision by a divided court on September 12, 1932. (*Perkins* v. *Perkins*, 57 P.I. 205.)

In the meantime, plaintiff, on December 19, 1930, informed defendant by letter of her claim that the assignment had been procured by fraud of her husband, asserted her claim that the dividends and stock were her separate property, and demanded that declared and to be declared dividends be delivered to her. Defendant, by letter, refused to comply with this request.

In May, 1933, Civ. No. 37517 was returned to the trial court. Plaintiff again refused to deliver the certificates to her husband, and was committed to prison until she should obey the court's orders. Plaintiff immediately applied for release on habeas corpus, and was admitted to bail. The Supreme Court of the Philippines thereafter denied her application. (*Perkins* v. *Director of Prisons*, 58 P.I. 271.) Mrs. Perkins presented a motion for reconsideration, and, while this motion was pending, left the Philippines and came to the United States.

Mr. Perkins followed her to this country. In August of 1933 he brought an action against the Guaranty Trust Company, depositary of the certificates, in the State of New York. In this action, in his first cause of action, he pleaded and relied upon the various Philippine judgments heretofore mentioned. In a second cause of action, based upon the theory of a conversion, he pleaded his title and ownership of the stock without reliance on the Philippine decrees. The trust company impleaded Mrs. Perkins. By answer and cross-complaint Mrs. Perkins put in issue all the allegations of the complaint, challenged the scope, validity and effect of the Philippine decrees, alleged her ownership of the stock, prayed for all dividends declared since 1930, alleged the Philippine judgments had been secured by fraud and mistake, challenged the jurisdiction of the Philippine courts, alleged that the stock was her separate property and that the rights of the parties therein were governed by the New York law. Mrs. Perkins attempted to make defendant company a party to this New York action but upon a special appearance of defendant the attempted service was vacated. In that proceeding

defendant, by affidavit, disclaimed any interest in the dividends in question.

While the New York action was pending, and after the defendant company had knowledge of that action and of Mrs. Perkins' claims made therein, Mr. Perkins, on March 14, 1934, petitioned the Manila court for an order requiring defendant company to show cause why it should not be compelled to transfer plaintiff's certificates on its records to him. Mrs. Perkins was not a party to these proceedings, nor was she informed of them, although the trial court found that between March 21, 1934, and April 9, 1934, a Mrs. Sherman, resident of Manila, held a special power of attorney from plaintiff, and that on April 9, 1934 (four days after the order was made), defendant informed Mrs. Sherman by letter that the order had been made. The court also found that mailing time between Manila and New York was thirty days. Defandant demurred to the petition of March 14, 1934, and raised the jurisdictional point that Mrs. Perkins was not a party. Neither Mr. Perkins nor defendant company informed the Philippine court of the pending New York action in which the question of title to the stock and the validity of the Philippine decrees was in issue. The Philippine court, on April 5, 1934, ordered defendant on or before April 11, 1934, to cancel on its stock records the certificates in plaintiff's name and to issue in Mr. Perkins' name new certificates representing the shares in question. The defendant company, although Hausermann was of the belief the order was void, did not appeal, but complied with the order on April 11, 1934. Thereafter, Mr. Perkins from time to time transferred some of the shares to third parties. After the transfer of April 11, 1934, and until May 28, 1937 (when defendant learned of the decision of the New York Court of Appeals), dividends were paid by defendant's checks drawn and delivered to the order of Mr. Perkins and his transferees. Since May 28, 1937, no further transfers have been made by Mr. Perkins, and all dividends accruing on the stock still in his name have been impounded.

The New York case proceeded to trial. The trial court decided the case in favor of Mr. Perkins. The New York Court of Appeals rendered its judgment (one judge dissenting without opinion) on May 25, 1937, reversing the trial court and directing the entry of judgment for Mrs. Perkins. An abortive appeal was taken to the Supreme Court of United

States, and thereafter dismissed. Thereafter, in February, 1938, a judgment was entered by the trial court pursuant to the direction of the Court of Appeals. Nothing has ever been paid on that judgment.

The instant case was commenced in January, 1938, in San Francisco. Mr. Perkins is not a party. Neither plaintiff nor defendant is a resident of California. Jurisdiction was secured over defendant by an attachment of defendant's funds in a San Francisco bank.

The original complaint alleges that plaintiff owns the shares in question and prays for all dividends declared thereon from 1930 through 1937. On January 16, 1939, plaintiff, over defendant's objections, was permitted to file a supplemental complaint for dividends declared in 1938. A second supplemental complaint was permitted to be filed during the trial for the 1939 dividends, and later, after trial, the case was reopened to permit plaintiff to file a third supplemental complaint for the dividend declared March 30, 1940. The answer of defendant sets forth several defenses, most of them predicated on the contention that the dividends were payable to Mr. Perkins. It is important to note that defendant has never claimed, and does not now claim, any title to the stock, nor does it seek to show that anyone other than Mr. Perkins is entitled to the stock or dividends.

At the trial of the present action plaintiff offered no evidence of her title to the dividends except the judgment roll of the New York action. Defendant's objections to the introduction of this record were overruled and the New York record was admitted as competent and conclusive evidence of plaintiff's title. Defendant made an offer to prove at the trial the allegations of its answer that the shares and the dividends belonged to the conjugal partnership of plaintiff and her husband, and that, therefore, the dividends were payable to plaintiff's husband and his transferees. Defendant also offered to prove that, under the facts, Philippine law was applicable. The trial court sustained plaintiff's objections to such offers and ruled that the New York judgment and every finding upon which it rests was conclusive against defendant with respect to everything therein adjudicated, i.e., res judicata in the same way as if defendant had been a party to the New York action.

As to other defenses raised in the answer, including the defense that Mrs. Perkins was estopped because the de-

fendant had paid the dividends to Mr. Perkins in good faith reliance upon the Philippine adjudications, the trial court permitted the introduction of evidence, and on such evidence made its findings in favor of Mrs. Perkins. On the issue of estoppel the court found that when every dividend was paid to Mr. Perkins or his transferees defendant knew that Mrs. Perkins "was claiming to own the said shares of stock upon which the dividend was issued, as her separate property, and that she was claiming that her husband had no interest therein or right of control thereover"; that in paying the dividends to Mr. Perkins defendant "was not induced to do so by and did not rely upon any pleading filed by plaintiff" in any Philippine court. The evidence shows the facts concerning the rendition of the Philippine adjudications, and shows, further, that when every dividend was paid to Mr. Perkins or his transferees the company knew there was litigation pending challenging the validity of the Philippine adjudications, that Mrs. Perkins was claiming that such adjudications were void, and that she was the owner of the stock.

In July of 1938, some six months after the present action was filed, Mr. Perkins commenced an action in the Philippine courts (Civ. No. 53317) against defendant to recover the impounded dividends and to establish his exclusive right to control and dispose of the shares then standing in his name. On motion of defendant corporation Mrs. Perkins was made a party to that action and summoned by publication. After her objections had been overruled, she appeared and answered in that case setting up by cross-complaint all her claims against her husband and against this defendant, and pleading the New York judgment.

On November 24, 1939, the defendant filed in the instant case its motion to dismiss the present action, or, in the alternative, that the trial be continued until the issues should be adjudicated in the Philippine courts. This motion was denied with leave to renew. On March 9, 1940, defendant again moved for a continuance and this motion was also denied. It was renewed and again denied at the close of the trial.

## MAIN CONTENTIONS OF APPELLANT

On this appeal the basic contention of defendant is that the judgment of the New York court is not binding on it because, so it is urged, it was not a party or privy to a party to that action.

The corporation further contends that the New York judgment failed to give full faith and credit to prior judicial proceedings in the Philippine courts, as required by federal statute. (28 U.S.C.A., p. 456, § 687.) The Philippine litigation, so it is urged, constituted a conclusive determination, binding on Mr. and Mrs. Perkins and on the corporation, that their rights were governed by Philippine law, under which the stock was property of the conjugal partnership, and Mr. Perkins was entitled to dividends. By reason of the fact that the New York court failed, in defendant's analysis, to give full faith and credit to the Philippine proceedings, it contends that the obligation of the courts of this state is to recognize the Philippine proceedings, rather than the New York judgment.

Defendant further contends that the doctrine of election of remedies precludes plaintiff from recovering judgment against the corporation for dividends paid to her husband, for which she has taken judgment against him in New York, even though the fact is, that the judgment is unsatisfied. It is also contended that the husband is a necessary party to the present suit, and that a portion of the recovery sought is barred by the statute of limitations. Other contentions are made that will be hereafter noted.

## ANALYSIS OF NEW YORK DECISION

Before discussing the basic question as to whether or not the New York judgment is res judicata in the present action, consideration should first be given to noting just what that court decided. As already pointed out, Mr. Perkins' amended complaint in the New York action set up two causes of action. The first claimed the right to the stock by virtue of the Philippine decrees; the second is in the form of an action for conversion, and, to use the words of the New York Court of Appeals (8 N.E.2d at p. 850), "opens up the question of title in and ownership of the stock de novo without reliance upon judicial proceedings in the Philippines." By his prayer Mr. Perkins asked that he be declared the true and lawful owner of the certificates, and that the certificates be delivered to him. Mrs. Perkins, so far as is pertinent here, denied all the material allegations of the complaint, and, in addition, urged that the Philippine judgment was obtained by fraud and mistake; that it was not based upon any adjudication on the merits; that the Philippine court was without jurisdic-

tion to make the decree of August 4, 1930; and that the order made on her motion to vacate that decree was discretionary and interlocutory only. She also alleged that she and her husband at all times since their marriage have been citizens of New York; that she is the owner of the stock; that the assignment executed by her on July 25, 1930, was void, as a matter of law, or if not void, was voidable for the fraud and misrepresentation of her husband. Among other things, she prayed that Mr. Perkins' complaint be dismissed; that the assignment be declared void, and that Mr. Perkins account to her for all dividends received by him. Mr. Perkins, by way of reply, put in issue all new matter set up in the answer, and again pleaded the Philippine proceedings as final adjudications. Thus, the questions as to the effect of the Philippine adjudications, as to who was owner of the stock, as to what law governed, and who was entitled to the dividends, were directly placed in issue.

The New York Court of Appeals first pointed out that the "character, quality, and extent of the ownership of, control over, and right to possession of the certificates representing the stock depends upon whether the laws of the Philippine Islands or the laws of the State of New York govern the property rights of Perkins and his wife . . ." (8 N.E.2d at p. 851.) The court first considers that point without reference to the Philippine decrees. After reviewing the facts, it is held that, under federal and Philippine statutes, Mr. and Mrs. Perkins retained their American citizenship; that they both were citizens of the State of New York, and neither became a citizen of the Philippines; that under article 10 of the Civil Code of Spain, in force in the Philippines, personal property is subject "to the laws of the nation of the owner thereof"; that the words "laws of the nation of the owner" thereof as used in article 10 "refers to and embraces the nationality of the owner and has been so construed by the highest court of the Philippine Islands. [Citing cases.]" (8 N.E.2d at p. 852.) Predicated upon this premise, it was held that the evidence conclusively demonstrates that Mr. Perkins retained not only his American nationality but also his New York domicile, and that under article 10 the personal property rights of the parties were to be governed by New York law.

The court then analyzes the evidence relating to the nature of the property rights of the parties. It finds that without

conflict the evidence shows that Mrs. Perkins purchased 23,776 of the 24,000 shares with her separate funds, and that the balance of 224 shares were acquired by gift from her husband. The court then points out that the certificates were in Mrs. Perkins' name until April 11, 1934, when the Philippine court made its order directing the company to transfer the shares to the name of Mr. Perkins. The court noted that no notice was given to Mrs. Perkins nor did she appear in that proceeding. The court then holds: ''The [Philippine] court was without jurisdiction to make the order and it was void and of no effect and in no manner affected her legal rights in the stock.'' (8 N.E.2d p. 853.)

After thus disposing of the April, 1934, order, the court holds that the domicile of the wife follows that of her husband, and that under the uncontradicted evidence, as a matter of law, the stock was the separate property of Mrs. Perkins. This conclusion was reached on the merits without reference to any prior Philippine adjudication, except that of April, 1934.

After thus disposing of the basic questions of title and ownership of the stock on their merits, the court then discusses the contention of Mr. Perkins and the finding of the trial court ''that all questions as to title, ownership, and right to possession of the stock and certificates are res adjudicata [sic] here by virtue of proceedings in the Philippine courts in which both plaintiff and his wife were parties.'' (8 N.E.2d p. 854.) The court discusses in detail each of the Philippine proceedings heretofore mentioned. It points out that in the action commenced by Mrs. Perkins she alleged that the stock was conjugal property, but points out that this allegation ''was based upon misapprehension and upon erroneous advice by her husband as to the applicable law'' (p. 854), which erroneous advice, both under Philippine and New York law ''constituted constructive fraud as a matter of law.'' (8 N.E.2d at p. 854.) The court analyzes the pleadings in that action and points out that Mr. Perkins in that action ''did not assert any claim or demand any adjudication that he had title to and was the sole owner of the property in question.'' (8 N.E.2d at p. 854.)

Attention is then given to the so-called ''consent'' signed by Mrs. Perkins, by which she withdrew her petition and consented to a decree in accordance with the prayer of her husband's cross-complaint. The evidence shows, said the

court, that this document was signed after Mr. Perkins "required her to discharge the attorney who was representing her in that action and had forbidden her legal advice." (8 N.E.2d at p. 854.) All the documents signed by her that day were "executed and delivered upon the express representation [by Mr. Perkins] . . . that doing so would take her out of court"; that Mr. Perkins notwithstanding the representation "proceeded to file the consent in the Philippine court" and the decree of August 4, 1930, was entered (8 N.E.2d at p. 854.) It was also pointed out that she had no right of appeal from that decree because "an appeal would not lie from the consent judgment." (8 N.E.2d at p. 855.) The court then holds: "By the filing of the complaint and answer there can be no doubt but that the Philippine court had jurisdiction of the parties and of the issue tendered by the pleadings. Had that issue been left in the case, any judgment thereon, after hearing and determination on the merits, would be conclusive as to all matters actually in issue and actually litigated. . . . But neither plaintiff nor defendant presented to the Philippine court the issue involved here, namely, whether the property rights of the parties were governed by the laws of the State of New York or by the Civil Code of Spain, and no such issue was or could be litigated or determined upon the merits in the Philippine court. Plaintiff's consent was, in fact, a voluntary nonsuit as to her cause of action. The decree, in express terms, authorized her to withdraw her complaint. Thus there was removed from the consideration of the court any question of the legal rights of the parties in so far as they were raised by the complaint; the stipulation was that the claim of defendant to the right to possess and administer the property might be determined in his favor without litigation. The scope of the jurisdiction of the Philippine court was limited to the precise matters presented by the consent, and the judgment or order does not constitute an adjudication upon the questions involved in the case at bar and is no estoppel to its maintenance."

After thus disposing of the consent decree the court then discusses the Philippine contempt proceedings, and the motion for relief from the consent judgment. The various pleadings are analyzed at length as are the opinions of the Supreme Court of the Philippines. The court concludes its discussion of these proceedings as follows (8 N.E.2d at p. 856) : "It is clear from the certified record of the proceedings in the

Philippine courts upon both motions that the granting of plaintiff's motion to punish his wife for contempt rested solely upon the technical but erroneous ground that an appeal from the judgment of August 4, 1930, was available which was not taken and that the denial of the wife's motion to vacate that judgment under section 113 of the Philippine Code of Civil Procedure was solely on the ground of laches and in the exercise of discretion. Under such circumstances, the courts of New York are not concluded by the decisions of the Philippine courts (*Everett* v. *Everett,* 180 N.Y. 452 [73 N.E. 231]; *Bannon* v. *Bannon,* 270 N.Y. 484, 491 [1 N.E.2d 975, 105 A.L.R. 1401]), for the purpose of the motion was to open the default and allow her to plead upon and litigate the merits. Neither decision was a bar to an action in equity in the Philippine Islands to set aside the decree for fraud (*Melgar and Noel* v. *Delgado and Alquizola,* 54 P.I. 668; *Anuran* v. *Aquino and Ortiz, supra*), nor does it bar such an action in the courts of New York State or estop Mrs. Perkins from questioning the validity of the judgment of August 4, 1930, on the merits on any ground available (*Hunt* v. *Hunt,* 72 N.Y. 217, 225 [28 Am.Rep. 129]; *Foote* v. *Lathrop,* 41 N.Y. 358; *Everett* v. *Everett, supra*)."

The court then holds that the assignment executed by Mrs. Perkins both under Philippine and New York law was void.

The court concludes its discussion of this phase of the case as follows (8 N.E.2d at p. 857) : "The uncontradicted testimony required the trial court to declare the assignment and the consent void and to hold that the judgment of the Philippine court was a nullity because of the fraud, imposition, duress, and deceit practiced by Perkins on his wife. The findings of the trial court are to the effect that both Perkins and his wife believed that the Philippine law governed the property rights of husband and wife and that Perkins so advised his wife. At the time of the execution of the assignment and consent, Perkins had compelled his wife to discharge the attorney who had represented her in the action in which the decree of August 4, 1930, was entered, and had declined to permit her to consult with an attorney, although she had requested permission so to do. A number of legal documents, including the consent and the assignment, were placed before her in the presence of several witnesses, some of whom declined upon her request to give her any advice and all of whom declared in affidavits used at the trial that Per-

kins then said to his wife that the signing of the papers would get her out of court. The evidence is uncontroverted that Perkins forthwith used the consent and other papers to bar Mrs. Perkins from her legal rights through court proceedings. The conclusion is inevitable that she executed the papers under mistake, misapprehension, duress, and fraud.''

The court then reversed the trial court with directions to make findings and to enter a decree ''that the assignment dated July 25, 1930, is null and void . . ., that Idonah Slade Perkins is the absolute owner of the stock in question together with all dividends thereon,'' that the trust company ''deliver the certificates'' to Mrs. Perkins, ''and that the plaintiff [Mr. Perkins] account for and pay over to her all dividends and increase received by him on account of the 24,000 shares of stock and proceed with accounting therefor.'' (8 N.E.2d at p. 858.) Such a decree was subsequently entered pursuant to such directions.

It will thus be seen that in New York Mr. Perkins, in a forum of his own choosing, litigated the exact questions that defendant corporation seeks to litigate here. Every issue of fact and law that defendant corporation sought to raise in the trial court, except those later discussed, was litigated and passed upon by the New York Court of Appeals. The basic question now presented is whether defendant corporation should now be permitted to litigate those identical issues in California, or whether it is conclusively bound by the New York judgment under the doctrine of res judicata. It should again be emphasized that defendant does not claim title in itself nor does it set up title in any third person. It claims the right to prove that the New York judgment was wrong and that in law and fact Mr. Perkins is entitled to the dividends on the stock—the very issue decided adversely to Mr. Perkins by the New York judgment.

We turn then to a discussion of the question as to whether the doctrine of res judicata is applicable to the facts of the instant case. As already pointed out, the present action was brought to recover dividends alleged to have been wrongfully paid to Mr. Perkins and for dividends impounded by defendant. For purposes of convenience, we will discuss the applicability of the doctrine of res judicata to the paid and impounded dividends separately, although, as will readily appear, some of the discussion on each point separately is applicable to both classes of dividends.

738

It seems quite clear to us that as to the impounded dividends the corporation has no interest in this litigation separate from the interest of Mr. and Mrs. Perkins. It claims no interest in the impounded dividends and sets up no interest of a third person. It simply claims that the dividends rightfully belong to Mr. Perkins, although, as between Mr. and Mrs. Perkins, it has finally been adjudicated that they belong to Mrs. Perkins. There are only two sides to this dispute over title to this stock, those of Mr. and Mrs. Perkins. The corporation's only interest is that it not be compelled to pay such dividends twice. As to such dividends, it is a mere stakeholder, a specialized form of bailee. If the New York judgment is binding on Mr. Perkins, if in an action brought by Mr. Perkins against the defendant for such dividends it can plead the New York judgment, if other jurisdictions including the Philippines would be compelled by the constitutional and statutory full faith and credit clauses to give effect to the New York judgment, the company is fully protected and should not be permitted to relitigate an issue which only involves Mr. and Mrs. Perkins, and which has already been passed on in New York. Inasmuch as it is our view that all these points must be decided in favor of Mrs. Perkins, it is our conclusion that, as to the impounded dividends, the New York judgment is clearly res judicata and binds defendant corporation although it was not a party to that action. This portion of the opinion assumes that the New York judgment is not subject to attack in this state on the ground, urged by defendant, that the New York court failed to give full faith and credit to the Philippine proceedings. That point will be considered hereafter.

As already pointed out, in the New York action between Mr. and Mrs. Perkins it has been determined that Mrs. Perkins owns the stock and is entitled to the dividends thereon. It is well settled that a corporation is not a necessary party to an action between rival claimants to shares of its stock. (*Estate of Thomas*, 147 Cal. 236 [81 P. 539] ; see, also, cases collected 6A Cal.Jur., p. 360, at p. 362, § 196.) Once the competing stockholders have litigated the question of title to a final conclusion, payment by the corporation to the successful party in such an action must be a defense in an action against the corporation by the other party. (*Bernhard* v. *Bank of Amer-*

*ica,* 19 Cal.2d 807 [122 P.2d 892].) Any other rule would lead to absurdities. Should the corporation be permitted in the present action to relitigate the title to the stock as between Mr. and Mrs. Perkins, insofar as the action involves its liability for impounded dividends, and should it obtain a decision that it is not liable to Mrs. Perkins because Mr. Perkins is the owner, it would follow that in a suit brought by Mr. Perkins for the impounded dividends the corporation would be required to pay them to him. Otherwise, it would escape liability altogether. Mr. Perkins' obligation, if he recovered the dividends, would be to turn them over to his wife, since as between the two of them it has been held in the New York case that she is entitled to them. Certainly, the company's interest not to be held liable twice for the dividends does not mean that it should not be held liable to one of the parties. This analysis demonstrates the logic of the rule that will compel the defendant, so far as the impounded dividends are concerned, as to which the corporation's only interest is that it should not be held twice to be bound by a judgment which binds Mr. and Mrs. Perkins. Payment to Mrs. Perkins in reliance on a valid judgment in her favor against Mr. Perkins must be a good defense in an action by Mr. Perkins against the corporation.

It may be that a corporation in the position of defendant herein does not fit into definitions commonly given as to who is "privy" to a judgment, so as to be bound by it although not a party. Where a situation arises which so obviously calls for application of the doctrine of res judicata as does the present case, insofar as it concerns impounded dividends, definitions of "privies" and "privity" drawn from other situations do not constitute an obstacle to reaching a sound result. In 1 Freeman on Judgments (5th ed.), page 893, section 409, is the following pertinent observation: "The rule limiting the effect of a judgment to parties and their privies is not to be taken in an absolutely literal sense nor is it without important qualifications and exceptions.

" 'Neither the benefit of judgments on the one side, nor the obligations on the other, are limited exclusively to parties and their privies.' 'The question of who is concluded by a judgment has been obscured by the use of the words "privity" and "privies," which in their precise technical meaning

in law are scarcely determinative always of who is and who is not bound by a judgment.' ''

Defendant itself cites situations well recognized in the law where the relationship between the party sued in the first action and the party sued in the second is such that the judgment in the first action is res judicata, and where, as here, the party sued in the second has no independent interest from that of the party sued in the first action. Thus, a landlord who defends through his tenant is conclusively estopped by the judgment (*Valentine* v. *Mahoney*, 37 Cal. 389); agents and servants are usually estopped by judgments against the principal or master (*Satterlee* v. *Bliss*, 36 Cal. 489); and a bailee by judgment against the bailor (*Hughes* v. *United Pipe Lines*, 119 N.Y. 423 [23 N.E. 1042].) The same reasoning applies to a stakeholder who is holding a fund as a disinterested party awaiting a final determination as to who, as between two disputing claimants, is entitled to the fund. As to such fund the third party, the corporation here, is a specialized form of bailee. Every principle of reason, fairness, justice and equity compels the conclusion that it should be bound by a final judgment between the two disputing claimants.

Both parties to the present appeal purport to find support for their respective contentions concerning the applicability of the doctrine of res judicata in the recent Supreme Court case of *Bernhard* v. *Bank of America*, 19 Cal.2d 807 [122 P.2d 892]. There is nothing said in that case which is conclusive either way on the issue here presented, but the holding favors the conclusion we have reached on this issue. In that case there was a dispute between claimants A and B as to the ownership of a bank account. The bank had paid the deposit to A. After the payment had been made to A, it was held in a proceeding between A and B, to which the bank was not a party, that A was the owner of the deposit. Subsequently, an action was brought against the bank on behalf of B. It was held that the bank could rely upon the decision in the prior action to which it was not a party as res judicata on the question of ownership of the deposit, that is, that such decree was a valid defense to the action brought by B. That holding favors the contentions of plaintiff. It means that if the defendant corporation pays Mrs. Perkins the impounded dividends in reliance on the New York judgment, it may thereafter properly urge that that judgment is res judicata in its favor in any action brought by Mr. Perkins.

It is true that in the Bernhard case the bank used the former judgment as a defense while in the instant case the plaintiff, Mrs. Perkins, seeks to use the New York judgment against the corporation. There is language in the case which indicates that the court assumed that the judgment could not have been used against the bank. In this connection the court declared that one is not bound by a judgment unless he was a party or in privity with a party. But those declarations are not in conflict with our holding that, so far as the impounded dividends are concerned, the corporation is bound by the New York judgment. As already pointed out, the corporation, although not a privy under the usual definition, does bear such a relation to the New York action as to be bound thereby. In the present case, insofar as the impounded dividends are concerned, it is immaterial to the defendant corporation whether Mr. or Mrs. Perkins receives them, its only interest being that it shall not be held twice. The corporation is protected from double liability by the law as declared in the Bernhard case, that is, in a suit by Mr. Perkins to recover impounded dividends paid to Mrs. Perkins the corporation can rely on the New York or California judgments as res judicata of the ownership of the stock in Mrs. Perkins, from which ownership arises the right to dividends.

█ This analysis compels the rejection of defendant's further contention that it should have been permitted to prove that the New York judgment in favor of Mrs. Perkins was based on her perjured testimony. Perjury constitutes intrinsic and not extrinsic fraud. (See cases collected 15 Cal.Jur., p. 18, § 124.) Defendant concedes that the parties to an action may not collaterally attack the judgment for perjury, but contends that the rule is otherwise where the judgment is invoked against one not a party. Since defendant is a mere stakeholder as to the impounded dividends, without legal interest in whether they shall be awarded to Mr. Perkins or Mrs. Perkins, his right to attack the judgment, insofar as it controls the right to impounded dividends, can be no greater than Perkins' right. So far as the paid dividends are concerned, defendant is sufficiently connected with the controversy to be bound by the same rule applicable to parties.

█ Defendant next contends that, even though the New York judgment would be binding upon defendant corporation as to the disposition of impounded dividends if conclusive as between Mr. and Mrs. Perkins, the particular judgment should

not and will not be recognized in this state, or elsewhere, because it failed to give full faith and credit to the prior Philippine adjudications. Predicated on this basic premise, defendant contends that payment in reliance on the New York judgment will not be a defense to it if sued by Mr. Perkins, in the Philippines or elsewhere. Stated another way, defendant contends that this court should recognize the Philippine proceedings, rather than the New York judgment, because the New York courts, contrary to the mandate of federal legislation, failed to give due recognition to the prior Philippine proceedings. This contention applies to the paid dividends as well as to the impounded dividends.

The effect which one state shall give to the judgments of another state within the United States is governed by the full faith and credit clause of the federal Constitution and legislation enacted pursuant therto. (U. S. Const., article IV, § 1.) The obligation imposed on a state court to recognize judicial proceedings in the Philippine Islands is referable to a federal statute first passed in 1804. It provides that the authenticated records and judicial proceedings of any state, territory, or of any country subject to the jurisdiction of the United States shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken. (28 U.S.C.A., p. 456, § 687.) The Philippine Islands, at the time of the judicial proceedings which preceded the New York litigation, if not a territory, were a "country subject to the jurisdiction of the United States."

The authority to enact the above provision existed by virtue of the constitutional power of Congress to regulate "the Territory or other Property belonging to the United States" (U. S. Const., art. IV, § 3), coupled with power under the Constitution to establish federal courts. Courts established in such territory under law of Congress are federal courts, to the decisions of which Congress may require the states to give full faith and credit. (*Alaska Packers Assn.* v. *Industrial Acc. Com.*, 294 U.S. 532 [55 S.Ct. 518, 79 L.Ed. 1044]; *Atchison, Topeka & Santa Fe Ry.* v. *Sowers*, 213 U.S. 55 [29 S.Ct. 397, 53 L.Ed. 695]; *Embry* v. *Palmer*, 107 U.S. 3 [2 S.Ct. 25, 27 L.Ed. 846]; 12 Am.Jur., p. 381, § 706.)

It is well settled that a state is not required to recognize the judgment of another state, or of a territory or country subject to the jurisdiction of the United States, where the judgment was rendered by a court without jurisdiction, or

where it has been obtained by extrinsic fraud. (See cases collected 15 Cal.Jur., pp. 240-248, §§ 246-249; 31 Am.Jur., p. 151, § 541, p. 156, § 549; cases cited *infra,* this paragraph.) The rule that it always may be shown that the judgment of the other state, territory, or country subject to the jurisdiction of the United States is in excess of jurisdiction or affected with fraud, is, however, subject to the limitation that if the court of the state which rendered the judgment has expressly litigated the jurisdictional questions or the matter of fraud, that determination becomes res judicata on those points and is itself protected by the full faith and credit clause. The jurisdictional and fraud questions cannot be relitigated a second time in another state. (*Davis* v. *Davis,* 305 U.S. 32 [59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518, with note]; notes on this case, 52 Harv.L.Rev. 683; 39 Columb.L.Rev. 274; *Stoll* v. *Gottlieb,* 305 U.S. 165 [59 S.Ct. 134, 83 L.Ed. 104]; *Chamblin* v. *Chamblin,* 362 Ill. 588 [1 N.E.2d 73, 104 A.L.R. 1183, 1187, with note]; *Hall* v. *Wilder Mfg. Co.,* 316 Mo. 812 [293 S.W. 760, 52 A.L.R. 723, with note]; *Harju* v. *Anderson,* 133 Wash. 506 [234 P. 15, 44 A.L.R. 450, 457, with note]; *Corliss* v. *Davidson & Case Lumber Co.,* 152 Kan. 327 [103 P.2d 781]; *Schaeffer* v. *Schaeffer,* 128 Conn. 628 [25 A.2d 243]; *Chicago Life Ins. Co.* v. *Cherry,* 244 U.S. 25 [37 S.Ct. 492, 61 L.Ed. 966]; 31 Am.Jur., p. 163, § 554.)

In *Davis* v. *Davis, supra,* the petitioner moved in the District of Columbia to set aside or modify a decree of divorce *a mensa et thoro* granted to him in the District of Columbia court on the ground that subsequently he had obtained an absolute divorce in Virginia. The District of Columbia court refused to recognize the Virginia decree on the ground that the Virginia court did not have jurisdiction because the husband was not a bona fide resident of Virginia for the required time. In reversing the judgment of the District of Columbia court, the Supreme Court of the United States held that since the husband's residence had been made an issue by the wife in the Virginia action and actually litigated, the decision of the Virginia court that it had jurisdiction was conclusive, and the District of Columbia court was bound to give effect to it.

The same rule has been applied where the determination of jurisdiction of the court to render judgment is had in a second state, rather than in the state which rendered the original judgment, and its validity is attacked in a third state. (*Degge*

v. *Baxter, Trustee,* 69 Colo. 122 [169 P. 580]; *Bidwell* v. *Bidwell,* 139 N.C. 402 [52 S.E. 55, 111 Am.St.Rep. 797, 2 L.R.A. N.S. 324].)

In the New York action Mr. Perkins pleaded that the Philippine proceedings were res judicata as to his right to the stock and dividends. The decree of the trial court was in his favor, but the Court of Appeals reversed the judgment with directions to enter judgment for Mrs. Perkins. (*Perkins* v. *Guaranty Trust Co. of New York,* 274 N.Y. 250 [8 N.E.2d 849].) The court held, as to the Philippine judgments and orders, that they did not determine issues raised in the New York suit, that they were void for want of jurisdiction, and that all of them, including those determining there had been no fraud, had been procured by the fraud of Mr. Perkins, or through mistake.

It thus appears that the New York court acted upon recognized grounds in refusing to accept the Philippine proceedings as binding. Defendant's contention that the Philippine courts in fact had already considered the same grounds of want of jurisdiction and fraud, and that, under the authorities cited above, the New York court violated the statutory full faith and credit clause in relitigating these issues is without merit. The New York court held that that very adjudication had been secured by fraud and mistake. ▆ Moreover, even if it be conceded *arguendo* that appellant is correct in this contention, nevertheless we are of the view that the courts of this state must recognize the New York judgment, rather than the Philippine proceedings. It is the general rule that as between conflicting judgments the last in time is controlling. (See cases collected 15 Cal.Jur., p. 57, § 143.) The full faith and credit clause does not call for abrogating this general principle. If the New York court failed to give the Philippine proceedings due recognition, the remedy of Mr. Perkins was to seek a review in the Supreme Court of the United States to compel the court to give full faith and credit to such proceedings. He started such review proceedings, but did not complete them. Whether the Philippine proceedings were entitled to recognition under the statutory full faith and credit clause, was a matter expressly adjudicated in the New York action. The New York court's decision on that issue, as on other issues, was res judicata and is entitled to full faith and credit in the courts of this state.

The decision of the Supreme Court of the United States in

*Treinies* v. *Sunshine Mining Co.*, 308 U.S. 66 [60 S.Ct. 44, 84 L.Ed. 85] impels this conclusion. In that case there were conflicting decisions of the State of Washington and the State of Idaho as to the ownership of certain stock. In the Washington proceedings the jurisdiction of the Washington court had been expressly adjudicated and upheld. Nevertheless, the Idaho court subsequently held the Washington judgment void for want of jurisdiction. The corporation which had issued the stock thereafter brought an interpleader action in a federal court. Federal courts must recognize state court judgments under the statutory full faith and credit clause. (See cases collected 15 Cal.Jur., p. 248, § 250; 28 U.S.C.A., p. 502, par. 119, and pocket supp., p. 94, par. 119.) The Supreme Court held that the federal court was bound to recognize the Idaho decision holding the Washington judgment void for want of jurisdiction of the subject matter, that "the principles of res judicata apply to questions of jurisdiction as well as to other issues, as well to jurisdiction of the subject matter as of the parties." (p. 78.) In its statement that the petitioner had not sought a review in the Supreme Court of the United States from the final decree of the Idaho court, the decision indicated that the remedy, if the Idaho court had failed to give full faith and credit to the Washington court's decision, was by such application for review, in default of which the Idaho decision was res judicata. (See notes on this decision, 3 Harv.L.Rev. 657; 40 Columb.L.Rev. 523.)

Appellant contends that if the present action had been brought in a Philippine court, it would have recognized the Philippine proceedings, rather than those in New York. The question before us is not what the Philippine courts would have done, but what is the obligation of this state (and of the Philippine courts now) under the constitutional and statutory full faith and credit clauses.

At the oral argument the court suggested the possibility that since recognition of judicial proceedings of the Philippine Islands is governed by a federal statute, whereas the Constitution commands that full faith and credit be given to the New York judgment, we might be compelled to accept such state judgment in the event of conflict. We do not place our decision on this ground. The statutory full faith and credit clause has been held to be a valid exercise of legislative authority granted by the Constitution. (*Alaska Packers Assn.* v. *Industrial Acc. Com.*, 294 U.S. 532 [55 S.Ct. 518, 79

L.Ed. 1044]; *Atchison, Topeka & Santa Fe Ry.* v. *Sowers,* 213 U.S. 55 [29 S.Ct. 397, 53 L.Ed. 695]; *Embry* v. *Palmer,* 107 U.S. 3 [2 S. Ct. 25, 27 L.Ed. 346]; 12 Am.Jur., p. 381, § 706.) Rather, the ground of decision herein is that the New York decision as the last in time is controlling as to the effect to be given the Philippine proceedings.

As opposed to this conclusion, appellant cites *Hammell* v. *Britton,* 19 Cal.2d 72 [119 P.2d 333]. In a prior action to quiet title judgment was entered for the plaintiff, Mrs. Britton, adjudging certain real property to be community property. (*Britton* v. *Bryson,* 216 Cal. 362 [14 P.2d 502]; *Britton* v. *Hammell,* 4 Cal.2d 690 [52 P.2d 221].) The defendant husband had executed a deed without consideration to defendant Hammell, to which the plaintiff had not consented. The husband died and his administrator was substituted as defendant in the prior action. The administrator filed a pleading setting forth that the property was not community because acquired after a divorce granted the husband in Colorado. While the California action was pending, Mrs. Britton, who theretofore had not known of the divorce decree, brought proceedings in Colorado which resulted in an order setting aside that decree. The trial court in the California action treated this order as a nullity. On appeal the judgment was reversed, and the validity of the Colorado order was sustained. (216 Cal. 362.) A new trial resulted in a judgment for the wife, which was affirmed. (4 Cal.2d 690.)

Thereafter, Hammell, the grantee from the husband, and defendant in the first action, instituted proceedings in Colorado to vacate the order setting aside the divorce decree, and obtained an order to that effect. He thereafter brought an action in California to set aside the quiet title decree in favor of the wife. Judgment against him was affirmed on appeal in the decision on which appellant herein relies. (*Hammell* v. Britton, 19 Cal.2d 72 [119 P.2d 333].) The opinion points out that the validity of the Colorado order setting aside the divorce decree had been sustained in California against the claim that there was a want of jurisdiction to make the order, and that the further claim of fraud in obtaining the order was made, or could have been made in the prior California action. The California court refused to set aside its own judgment on the basis of a Colorado order which had failed to give full faith and credit to the California judgment.

Appellant also relies on *Martin Bros. Box Co.* v. *Fritz,* 228

Iowa 482 [292 N.W. 143]. Judgment was rendered in Iowa in favor of the plaintiff there. On proceedings in Iowa to vacate the judgment for want of jurisdiction of the corporate defendant, the court sustained the judgment. Thereafter, the plaintiff brought an action in Indiana to enforce the Iowa judgment, in which the Indiana court held it to be void. The defendant then moved in Iowa to vacate the Iowa judgment on the strength of the Indiana judgment. This relief was refused.

In both the above cases there was an attempt to vacate a final judgment in the state which had rendered it. Here, there is an action pending in this state which must be decided, in which the question is, who, as between a husband and wife, is entitled to dividends on shares of stock issued by a corporation. That issue has been the subject of prior litigation in other jurisdictions. The question is, which of the prior conflicting judgments shall be regarded by this court as res judicata of the issue involved in the present action. Under the decision of the Supreme Court of the United States in *Treinies* v. *Sunshine Mining Co., supra,* the obligation of this state is to recognize the New York judgment. That judgment is binding as between Mr. and Mrs. Perkins, and, insofar as the present action involves liability for impounded dividends, is conclusive as to the defendant corporation.

### DOCTRINE OF RES JUDICATA AS APPLIED TO THE DIVIDENDS PAID OUT BEFORE NOTICE OF THE NEW YORK JUDGMENT

 We are of the opinion that the same reasoning that compels the conclusion that the New York judgment is res judicata against the corporation so far as the impounded dividends are concerned, likewise compels the conclusion that, under the facts of this case, the New York judgment is res judicata as to the dividends paid to Mr. Perkins and his transferees prior to the New York judgment. The basis of the holding that the corporation is bound by the New York judgment, so far as the impounded dividends are concerned, is that the corporation has no adverse interest, as between competing claimants, as to who is the owner of its stock. A determination that the title to the stock rests in one of the competing parties is, and should be, binding on the company. (In addition to cases already cited, see cases collected 6A Cal.Jur., p. 675, § 380.) In the present case, none of the dividends

were paid by the corporation to Mr. Perkins without knowledge of the claims of Mrs. Perkins. Mrs. Perkins, prior to 1934, was the stockholder of record. For years prior to 1930 all dividends had been paid to her. Prior to the time the first challenged dividend was paid to Mr. Perkins, Mrs. Perkins had informed the company that she claimed the dividends. Nevertheless, the company, upon the representations of Mr. Perkins, its general counsel, elected to pay these dividends to him, and to take back from him and his partner indemnity agreements to indemnify the company against the very loss it now faces. The company did not pay any of the dividends in good faith reliance on any of the Philippine adjudications, or transactions. The defendant pleaded as a special defense that it had so acted, and urged that for that reason, Mrs. Perkins was estopped. The trial court on competent evidence made findings on this issue in favor of plaintiff. The evidence shows that the so-called consent judgment was entered in August, 1930, and in September, 1930, Mrs. Perkins filed her answer in the contempt proceedings alleging she was owner of the stock in spite of the consent judgment. In December, 1930, she informed the company, by letter, of the nature of her claims, and, in January, 1931, moved to vacate the consent judgment because of fraud and mistake. The various legal proceedings in the Philippines were pending there, and not finally determined, until the summer of 1933. In August, 1933, Mr. Perkins instituted his action in New York against the trust company. Shortly thereafter Mrs. Perkins was impleaded and immediately challenged the Philippine decrees on the ground of lack of jurisdiction and fraud and mistake. The company had full knowledge of this proceeding for the reason that it appeared and had an attempted service upon it vacated. Thereafter, without disclosing to the Philippine court the fact that the validity of the Philippine decrees was in issue in New York, it complied with the Philippine decree of April 5, 1934, ordering it to transfer the stock to Mr. Perkins. It paid dividends thereafter and until May 28, 1937, to Mr. Perkins, in spite of its full knowledge of the charges made in the New York action. Based on this evidence, the trial court found that when every dividend was paid to Mr. Perkins or his transferees the defendant knew of Mrs. Perkins' claims, and concluded that such payments were not made in good faith reliance on the Philippine decrees.

These findings and the inference therefrom are amply supported.

Thus, the factual situation is one where a corporation with full knowledge that A and B are disputing the question as to who is entitled to dividends on its stock, elects to pay those dividends to B, one of the disputants, the one who is not the stockholder of record, and to take back from B a contract of indemnity. A corporation, when such a dispute arises, is not required to determine at its peril who is entitled to the dividends. It could have impounded all dividends until the dispute was settled, or could have interpleaded the disputants. If it elects to pay one of the disputants, it should be in no better or different legal position than if it had pursued the obvious and more careful courses suggested above. By taking sides in the dispute, that is, by paying to one of the disputants, it should gain no rights that it would otherwise not possess. If a judgment determining title to stock and the right to impounded dividends is res judicata, as already held, there is no principle of logic, fairness or equity that does not compel a like conclusion where the dividends are paid out under facts such as exist here. If a corporation has no adverse interest in an action between two disputants over title to its stock, it cannot gain such an adverse interest by choosing sides in the controversy and paying the dividends to one of the disputants with full knowledge of the other's claims.

There is a remarkable paucity of authority on the subject under discussion. We have been referred to but two cases from other jurisdictions where the point here under discussion was directly involved. Both of them support the conclusions above set forth.

*Hughes* v. *United Pipe Lines Co.,* 119 N.Y. 423 [23 N.E. 1042], was decided by the New York Court of Appeals. The facts were that William and Maria Stephans drilled and produced oil on land claimed by Hughes. The oil was stored by the Stephanses with the United Pipe Lines Company. Hughes notified the company that the oil was his. The Stephanses sued Hughes to quiet title to the oil and Hughes secured an adjudication that he was the owner of the oil. The United Pipe Lines Company was not a party to that action. United Pipe Lines Company, with full knowledge of the dispute, took indemnity from the Stephanses and delivered the oil to them. Hughes sued the United Pipe Lines Company for conversion. The Stephanses were not parties

to this action. The trial court held that the judgment be-
tween the Stephanses and Hughes was conclusive on the issue
of title as against the United Pipe Lines Company. This
conclusion was affirmed, the court stating (23 (N.Y.) N.E.,
at p. 1043): "The very matter in issue in that action was
the title to the well, and the oil produced therefrom. To
maintain their action the plaintiffs were bound to establish
that the well and oil belonged to them, and the defendant in
that action could defeat the same by showing that the well
and oil belonged to him, and he prevailed upon that issue;
and thus there was an adjudication, binding upon the plain-
tiffs therein, that they had no title to the well, or the oil pro-
duced therefrom, and that the same belonged to Hughes. The
fact thus established could not again be brought in dispute
between the same parties or their privies; and the judgment
in that action conclusively established against the plaintiffs
therein the right and title of Hughes to the well, and the
oil produced therefrom. This defendant stands in the place
of Stephans and wife. *It does not hold or claim the oil in its
own right, but claims solely to hold it for Stephans and wife,
by whom it has been indemnified against the claim of this
plaintiff. The adjudication, therefore, which binds them,
binds it; and this conclusion rests upon law so elementary
that no citation of authorities to sustain it is needed.* It is
clear, therefore, that the plaintiff is entitled to recover the
value of this oil from the defendant. He early gave it notice
of his claim. He demanded the oil of it, and it refused to
recognize his right." (Italics added.)

Defendant practically concedes that the second case—*Com-
mercial Nat. Bank* v. *Allaway,* 207 Iowa 419 [223 N.W.
167]—decided by the Supreme Court of Iowa in 1929, is in
point, its basic argument being that the decision is wrong.
In that case, Allaway delivered his demand note to the Iowa
Savings Bank. That bank pledged that note, together with
others, with the Commercial National Bank to secure a loan.
The Iowa Savings Bank failed, whereupon the Commercial
National Bank sold out the pledge and purchased Allaway's
note. The Iowa Savings Bank sued Commercial National
Bank to recover the note, charging fraud in the sale, and its
lack of authority to make the pledge. Judgment went for
Commercial National Bank.

After that judgment became final, the Commercial Na-

tional Bank brought the present action against Allaway on the note. Allaway's defense was that the Iowa Savings Bank was the owner of the note, and that he had paid that bank the full amount of the note. The Commercial National Bank pleaded the former adjudication as res judicata. The trial court decided against that contention. Thus, the situation is one where Allaway owed a debt and two banks claimed it. In litigation between the banks, to which Allaway was not a party, it was decided that bank A owned the note. Bank A sued Allaway and he defended on the ground that he had paid bank B, and that B, in fact, owns the note. The Supreme Court of Iowa, in reversing the trial court, held the prior judgment between A and B res judicata against Allaway on the issue of ownership, and that he could not (223 N.W., p. 168) ''have adjudicated, for the second time, a controversy that was settled by a former trial. . . .'' That is exactly the legal situation presented in the instant case. In disposing of the contention that the judgment was not res judicata, the court stated:

''So far, then, as the Iowa Savings Bank and its receiver are concerned, the adjudication certainly is complete. Can the appellee assert the fact thus found, in any way, that the Iowa Savings Bank and the receiver could not? Manifestly not, so far as the issues here involved are affected. Each assertion thus made by appellee must have been for and on behalf of the Iowa Savings Bank and its receiver, because the appellee was attempting in the trial below to prove that the appellant was not the real party in interest, by showing that truly and legally the Iowa Savings Bank and its receiver were such parties. To do this, it was necessary for appellee to become, for the time being, so far as his cause is concerned, the Iowa Savings Bank or its receiver.

''Hence, for all practical and legal purposes, appellee became the Iowa Savings Bank or its receiver, in order to plead their cause in the premises. A higher right could not accrue to the appellee in this respect than that owned and possessed by the Iowa Savings Bank and its receiver. Should appellee succeed, it must be on the rights and properties of the Iowa Savings Bank and its receiver in and to the note in question. Appellee himself had no property in this note, which is in the hands of an innocent purchaser for value, because he is the maker thereof, and not the owner. The only interest he

claims therein is the right to make an offset against it, providing the same legally again became the property of the Iowa Savings Bank. Clearly, then, the adjudication which bound the Iowa Savings Bank and its receiver must, of necessity, in the instance here under consideration, bind appellee, because appellee in this proceeding is simply reasserting the same rights, equities, and properties as those which were advanced in the former suit.

"Necessarily, in the present controversy, appellee must, in asserting his own claims, step into the position of the Iowa Savings Bank and its receiver, and there proclaim for them their (the Iowa Savings Bank and its receiver) own ownership of the note; for, if appellant is not the real party in interest, it is because that bank and its receiver owned appellee's note." The court then went on to hold that the prior judgment between the two banks, so far as the issue of ownership of the note was concerned, was a conclusive "muniment of title" which Allaway could not deny.

The factual situations presented in these two cases are practically identical with that presented in the instant case. In both, prior to the second trial, the defendant had parted with money or property so that if the first judgment was binding on him, his sole recourse was to collect from the unsuccessful litigant in the first case. In both, the defendant in the second trial was not asserting his or a third person's title, but was seeking to assert the title of the unsuccessful litigant in the first action. Those are the identical facts here presented.

On this issue, defendant purports to find some comfort in the case of *Bernhard* v. *Bank of America,* 19 Cal.2d 807 [122 P.2d 892], heretofore mentioned in connection with our discussion of the impounded dividends. It will be remembered that in that case, on the issue of the ownership of a bank account, the court held that a judgment on the issue of title in favor of A and against B, was res judicata in favor of C, the bank, when sued by B. That is all that was actually decided by that case. It is true that the court assumed, *arguendo,* that the bank might not have been bound by the prior decision in an action by B against it had the prior adjudication determined that B was the owner of the fund. The court did not decide that question as a matter of law, but accepted that argument, for the purposes of the decision, and held that even if true it was no reason why the bank could

not rely on the decision in favor of A, and therefore in favor of the bank, it having paid A. The basic reason why this assumption, made in the Bernhard case, is not in point in the instant case, is that in that case the bank acted without knowledge of the competing claims. It paid A, whom it believed to be rightfully entitled. It had no knowledge of the claims of B. We can agree with defendant, and with the assumption made in the Bernhard case that, in such a case, where the depositary has paid one person without knowledge of another's claim, a judgment between the two disputants would not be conclusive against the depositary. But that is not the instant case. As already pointed out, defendant here had full knowledge of the claims of Mrs. Perkins before it parted with the dividends. No estoppel applies against her. No equities exist in favor of defendant. All the equities are in favor of Mrs. Perkins who has litigated the issue of ownership to a final conclusion as against her husband, who has protested the payments to her husband at all times, and who attempted to make defendant a party to the New York action. Defendant elected to pay the dividends to Mr. Perkins with full knowledge of the facts, and elected not to permit itself to remain in the New York action. To require Mrs. Perkins to relitigate the issue of ownership, under such circumstances, would impose upon her a grave injustice. Defendant has no compensating equities in its favor.

We therefore conclude this phase of the discussion with the holding that, as to all the dividends, the New York judgment is res judicata.

### ELECTION OF REMEDIES

Defendant further contends that the doctrine of election of remedies bars Mrs. Perkins from suing it for dividends for which she was given judgment against Mr. Perkins in the New York action; that she could sue either Mr. Perkins or defendant, but not both concurrently or consecutively; that her remedies were alternative and inconsistent, and, having taken judgment against Mr. Perkins, she cannot now sue defendant for the same dividends. Admittedly, nothing has been paid on the judgment against Mr. Perkins. It is conceded that this doctrine is not applicable to Mrs. Perkins' claim for the dividends declared subsequent to the New York judgment of 1938.

Defendant argues that the effect of the judgment against

Mr. Perkins as a bar to the present suit against it for dividends paid Mr. Perkins is to be determined by New York law, rather than by California law; that New York would not have permitted an action there against appellant by reason of Mrs. Perkins taking judgment against her husband, and, hence, it may not be sued in California.

The New York law, in appellant's analysis, until changed by statute in 1939, was as declared in *Fowler* v. *Bowery Savings Bank,* 113 N.Y. 450 [21 N.E. 172, 10 Am.St.Rep. 479, 4 L.R.A. 145]. In that case, John White, husband of Elizabeth White, deposited funds in defendant bank as follows (p. 452): "Bowery Savings Bank in account with John White for Elizabeth White." With notice of the claim of the wife's executor, the bank paid the deposit to the executor of the husband's estate. The executor of the wife's estate recovered judgment against the husband's executor. The judgment was not satisfied. In the suit against the bank it was held that, although the plaintiff's cause of action against the bank was clear, he had made an election of remedies which barred the suit against the bank. The court held that by suing the husband's executor, the plaintiff ratified and affirmed the payment to him, with the result that the plaintiff could not thereafter disaffirm the payment and sue the bank. The theory of the court was that payment to one to whom the plaintiff had authorized payment, would have discharged the bank. By bringing action against the executor of the husband's estate the plaintiff ratified and adopted the payment to him with like effect as if it had been authorized originally. In the opinion of the New York court the action against the executor was in effect one to recover funds of plaintiff lawfully received, but wrongfully withheld by defendant. In the view of the court, the funds could be the property of plaintiff, for which he would have a direct right of action against the executor, only on the hypothesis that payment to the executor was authorized or ratified.

The court limited the rule to the case where the relation between the plaintiff and the depositary was that of general creditor and debtor. It said that, had the deposit been a special one, the plaintiff could have sued the bank after obtaining judgment against the executor.

In *Wood & Henderson* v. *Claiborne,* 82 Ark. 514 [102 S.W. 219, 118 Am.St.Rep. 89, 11 L.R.A. N.S. 913], the limited application of the rule as announced in the Fowler case was

emphasized. There the defendants, as attorneys, had received funds of their client, who was a minor, and had made payment over to the minor's father, who was not authorized to receive it because he was not appointed guardian. The client, after recovering judgment against his father, which was not satisfied, was allowed to recover judgment against the attorneys. The court said (102 S.W. p. 220) : "The relation between an attorney and a client for whom he has collected money is not that of debtor and creditor, but that of principal and agent. *Wallis* v. *State*, 54 Ark. 611 [16 S.W. 821]. The client for whom the money was collected in the former suit was the infant, and not the next friend. When the money was collected, the defendants held it as the agent of the plaintiff. If they wrongfully disposed of it, the plaintiff was not required to elect whether he would sue the defendants for the unlawful conversion of the money or the party to whom it was paid. He had the right to follow the fund and to bring an action against any one into whose hands it came with notice of plaintiff's rights without relieving his agents of liability for having wrongfully disposed of the money belonging to him. To maintain the action against the party receiving the money plaintiff did not have to condone the act of the agent in making the payment or admit that the payment was properly made. On the contrary, his contention is that the payment by the agent was unlawful, and that both the agent and the party receiving the money are liable." (See, also, *Foshay, Trust & Savings Bank* v. *Public Utilities C. Corp.*, 64 F.2d 665; *Furlong* v. *National Bank of Detroit*, 285 Mich. 517 [281 N.W. 309, 118 A.L.R. 567, with note]; *Goodyear Dental Vulcanite Co.* v. *Caduc*, 144 Mass. 85 [10 N.E. 483]; see, also, note 116 A.L.R. 601—Doctrine of Election of Remedies as Applicable Where Remedies are Pursued against Different Persons.) In such cases the two remedies have been held to be consistent.

▮ The doctrine of election of remedies bars only inconsistent remedies. Where remedies are concurrent and consistent, whether against the same person or different persons, a party may pursue one or all of such remedies until satisfaction is had. (28 C.J.S., p. 1063, § 3.)

The plaintiff herein concedes that if the Fowler case is still the law of New York, and, if the question of whether there has been an election of remedies is to be governed by New

York law, rather than California law, then the Fowler case is controlling on the facts of the present case.

The Fowler case, decided in 1889, has been followed in decisions of a number of jurisdictions. (*Sackett* v. *Farmers' State Bank of Boone*, 209 Iowa 487 [228 N.W. 51] ; *Union Guardian Trust Co.* v. *First Nat. Bank-Detroit*, 271 Mich. 323 [259 N.W. 912] ; *In re J. A. M. A. Realty Corporation*, 92 F.2d 3, 7; *United States Fid. & Guar. Co.* v. *Fidelity Natl. Bk. & Tr. Co.*, 232 Mo.App. 412 [109 S.W.2d 47] ; *Crook* v. *First Nat. Bank of Baraboo*, 83 Wis. 31 [52 N.W. 1131, 35 Am.St.Rep. 17] ; *National Surety Co.* v. *Perth Amboy Trust Co.*, 76 F.2d 87, 89.) Some cases have followed the Fowler case where a check has been forged or bears a forged endorsement. In that class of cases the courts have seemed eager to find a ground for releasing from liability a bank that has acted in good faith without notice of the check's infirmity, and often without negligence. The same motive was not present in the Fowler case and cannot operate in the present case where the party paying out the dividends had notice of conflicting claims.

The rule of the Fowler case, as well as certain other applications of the doctrine of election of remedies, has been sharply criticized as unjust, inequitable and unnecessary. (38 Columb.L.Rev. 292; 33 Columb.L.Rev. 1426; 52 Harv.L. Rev. 1372; 42 Harv.L.Rev. 704; 36 Harv.L.Rev. 593; 26 Harv.L.Rev. 707; Clark on Code Pleading (Hornbook Series) pp. 335-339, § 76.) The Supreme Court of the United States has said: "At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended." (*Friederichsen* v. *Renard*, 247 U.S. 207 [38 S.Ct. 450, 62 L.Ed. 1075] at p. 213.) It has been suggested that the doctrine should be entirely abolished, and that the allied doctrines of res judicata, waiver, merger and estoppel will serve to bar a later action against the same or another party where justice requires the bar. (26 Harv.L.Rev. 707, at p. 708; 38 Columb.L.Rev. 292, at p. 319.)

In certain situations where there has been said to be an election of remedies there is a true ratification. For instance, where an agent makes an unauthorized contract of sale on behalf of his principal, the principal has the right to disaffirm the contract and recover the subject of the sale from the third party, or he may ratify and affirm the contract and sue the third party for the purchase price, or sue the agent where

he has received it. (Restatement of Agency, § 97, illustrations and comment, p. 242.) If the principal pursues the latter course there is a true ratification of the unauthorized contract, a ratification in fact.

In situations such as the Fowler case, however, the only ratification is one created by legal fiction, and is in fact contrary to the true facts. It is a fiction implied in law from the supposed necessity of so doing to afford the creditor a direct remedy against the party who received payment, but was not entitled thereto. The transaction as it actually takes place is a payment by the debtor to the unauthorized recipient in the belief, and upon the claim, that he is the party lawfully entitled to the fund. The unauthorized recipient's claim to receive the fund in his own behalf is of the essence of the payment and receipt. The party lawfully entitled to the fund does not ratify such transaction, but repudiates it, claiming ownership in himself. That there is a "ratification" can only be a fiction of law. That it should be necessary to create this fiction to give the creditor a direct right of action against the recipient seems a false premise in the present development of the law. It is sufficient to give the creditor a direct right against the recipient that such recipient was not entitled to receive payment from the debtor and that the plaintiff was entitled to receive it. (That a right of restitution is generally recognized in this situation see the Restatement, Restitution, § 126 and § 133; see, also, Seavey and Scott's Notes on Restatement of the Law of Restitution, (1937) pp. 179-182.)

In *Marshall* v. *Swaim*, 102 Cal.App. 119 [282 P. 423], at page 121, the appellate court said: ". . . whenever one man has in his hands the money of another which he ought to pay over, he is liable to the action of money had and received, although he has never seen or heard of the party who has the right. When the fact is proved that he has the money, if he cannot show that he has a legal or equitable ground for retaining it, the law creates the privity and the promise."

In this analysis the remedies against the recipient and the party making payment are consistent and concurrent. The basis of both is that payment has not been made to plaintiff or to one authorized to receive it on his behalf. There is, of course, a right to only one satisfaction.

It is to the advantage of the debtor, rather than to his prejudice, that the creditor obtain payment from the recipi-

ent, since thereby the debt is discharged or reduced. To permit a direct suit against the recipient will avoid multiplicity of actions where the recipient is solvent, through obviating the necessity of suit first against the party making payment, who, in turn, will sue the wrongful recipient.

In some states harsh application of the doctrine of election of remedies is avoided through viewing it as an aspect of the law of res judicata, merger, waiver, estoppel and allied doctrines. In California it has been declared repeatedly that the doctrine is a phase of the law of estoppel. (*Roullard* v. *Rosenberg Bros. & Co.*, 193 Cal. 360, 366 [224 P. 449]; *Campanella* v. *Campanella,* 204 Cal. 515, 520 [269 P. 433]; *Hines* v. *Ward,* 121 Cal. 115, 121 [53 P. 427]; *McDanels* v. *General Ins. Co.,* 1 Cal.App.2d 454, 461 [35 P.2d 394, 36 P.2d 829]; *Commercial Centre R. Co.* v. *Superior Ct.,* 7 Cal.2d 121 [59 P.2d 978, 107 A.L.R. 714].) The following quotation is typical: "The doctrine of election of remedies is but a specific application of the equitable doctrine of estoppel, and it has been frequently held that a change in remedies does not bring about an election of remedies unless the change involves a prejudice to the opposing party." (*Commercial Centre R. Co.* v. *Superior Ct., supra,* at p. 129.)

Counsel has cited no case in this state which is at all close on the facts to the pending case, and our independent research has found none. But the cases cited above establish general principles which leave no doubt that if the law of California governs, the judgment against Mr. Perkins does not bar this suit against defendant. Defendant contends, however, that the rule of New York applies, which, in its analysis, remains as declared in the Fowler case, *supra.*

No decisive authority as to which law controls is cited by either party. Defendant relies on the following from 2 Beale, Conflict of Laws, § 450.19, p. 1429: "If an election of remedies is made in another state, no action will be allowed in this state on the other remedy."

It is not entirely clear from the context and contiguous portions of the text that the writer intended to declare that in the event of conflict between the law of the forum and the law of the place where the judgment was rendered the law of the latter governs as to whether there has been an election. His purpose may have been merely to show that a foreign judgment, like a domestic judgment, may operate as an election of remedies. In the only case cited in support of

the text, the former judgment had been satisfied and necessarily was a bar to suit against another party for the same debt. (*Schmidt* v. *North German Lloyd S.S. Co.*, 130 Misc. 853 [225 N.Y.S. 507].)

In *Bigelow* v. *Old Dominion Copper M. & S. Co.*, 225 U.S. 111 [32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas., Vol. 30, 1913E, 875], it was held that whether one is a privy to a judgment against another so as to determine its effect as res judicata, is to be decided according to the law of the forum. In that case, suit was brought in Massachusetts by a corporation against a promoter to recover illegal and fraudulent profits collected by him. It was urged by the promoter defendant that a judgment of a federal court in New York in favor of another promoter who had acted in cooperation with defendant was res judicata in his favor as to the absence of a cause of action. The court conceded that the effect of the New York judgment was to bar a suit in New York against the Massachusetts defendant. But it held that whether the New York judgment was a bar to the Massachusetts suit, depended on whether the Massachusetts defendant was a privy to the New York judgment, and that that question was to be determined by Massachusetts law, under which defendant was not a privy.

But where the question is whether the doctrine of merger through judgment bars an action against one not a party to a former suit, it has been held that the law of the place of the former judgment applies. Thus, in *Suydam* v. *Barber*, 18 N.Y. 468 [75 Am.Dec. 254], a joint obligor was sued in New York. A prior judgment had been obtained in Missouri against another joint obligor. According to the law of New York as it stood at that time, the cause of action against joint obligors was merged in a judgment taken against one of them, and the others could not be sued thereafter, but the law of Missouri was otherwise. The court held that to allow the Missouri judgment to bar the action against the joint obligor not sued there, would be to give that judgment greater effect in New York than it had in Missouri, where rendered. The full faith and credit clause requires a state to give to the judgment of a sister state the same effect it would have where rendered. (3 Freeman on Judgments, (5th ed.) p. 2862, § 1386.)

It has also been held that where, under the law of the jurisdiction of the prior judgment, there is a merger by recovery of a judgment against one joint obligor, suit is barred in the

forum, although under its law there is no merger. (*Crehan v. Megargel,* 199 App.Div. 649 [192 N.Y.S. 290]; contra, *Odom & another* v. *Denny,* 82 Mass. (16 Gray) 114; *Shirley* v. *Shattuck,* 54 Mass. 256; see, generally, 3 Freeman on Judgments, (5th ed.) p. 2877, § 1394; 31 Am.Jur. pp. 146-148.)

In view of the uncertainty as to which law governs in determining whether a prior judgment bars an action against one not a party thereto, we prefer to leave that question undecided and to place our decision on the ground that if the New York law controls, that law does not bar the present suit against defendant. Although the Fowler case has served as the precedent for decisions in other jurisdictions and in lower New York courts, counsel cites no similar case where the New York Court of Appeals adhered to the law as there declared, and we have found none. In *City of New York* v. *Bronx County Trust Co.,* 261 N.Y. 64 [184 N.E. 495], the Court of Appeals expressed a view unequivocally opposed to that case. Employees of the city of New York had made out fictitious payroll checks and forged endorsements of the fictitious payees. Speaking of the right to seek recovery from both the wrongdoer and the banks, the court said (p. 73): ". . . there seems to be no good reason why the city was not at liberty to pursue both the forgers and the banks in civil actions for the recovery of its loss without surrendering its rights against either until it had been paid. Election of remedies is a defense only 'when a choice is exercised between remedies which proceed upon irreconcilable claims of right' (*Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N.Y. 285, 291 [130 N.E. 295, 14 A.L.R. 658]), and has no application to the pursuit of remedies against parties concurrently liable, short of payment and satisfaction."

The court did not cite the Fowler case. In two cases in the Supreme Court, Appellate Division, rendered after *City of New York* v. *Bronx Trust Co., supra,* the court placed the decisions squarely on the authority of the Fowler case, doubtless overlooking the language of the Court of Appeals in the later City of New York case. (*Hansen* v. *Brooklyn Trust Co.,* 285 N.Y.S. 2; *Mace* v. *Rockland County Trust Co.,* 291 N.Y.S. 835.)

It is true that the remarks of the court in the City of New York case, quoted above, were not in their entirety necessary to the court's decision. Partial restitution had been obtained from the wrongdoers through the police department. The court

held that such restitution did not bar suit against the bank for the balance. Even under the Fowler case, a judgment against a forger for some of the forged checks doubtless would not "ratify" other checks forged by him. Nevertheless, the court's strong expression of its view, in opposition to the rule of the Fowler case, impels us to the conclusion that the court would not have adhered to that rule at the time of the Perkins litigation in New York. Our conclusion in this respect is strengthened by statements of the Court of Appeals in two cases, *Schenck* v. *State Line Telephone Co.*, 238 N.Y. 308 [144 N.E. 592, 35 A.L.R. 1149], and *Clark* v. *Kirby*, 243 N.Y. 295 [153 N.E. 79], indicating that the court would not apply the doctrine of election of remedies where substantial injustice would result. In the latter of these cases the court said (p. 303) : ". . . if the remedy chosen be insufficient or inadequate or useless, the rule has not barred the plaintiff from taking other timely methods to obtain his rights. [Citing cases.] All procedure is merely a methodical means whereby the court reaches out to restore rights and remedy wrongs; it must never become more important than the purpose which it seeks to accomplish. Unless some necessary requirement has been omitted, a wrong move or a mistake in the method of seeking relief from the courts ought not to furnish protection for a wrongful act." (See, also, *Pomerantz* v. *Massachusetts Acc. Co.*, 169 Misc. 434 [7 N.Y.S. 2d 854] ; *Lumber Mut. Casualty Ins. Co.* v. *Friedman*, 176 Misc. 703 [28 N.Y.S. 2d 506].)

In 1939 New York enacted several code sections relating to certain phases of the doctrine of election of remedies. These sections were recommended by an official law revision commission, which prepared a painstaking study of the entire doctrine. Section 112a of the Civil Practice Act, enacted at that time, provides: "Where rights of action exist against several persons, the institution or maintenance of an action against one, or the recovery against one of a judgment which is unsatisfied, shall not be deemed an election of remedies which bars an action against the others."

In proposing this section the commission referred to the rule of the Fowler case. (Report of the Law Revision Commission, State of New York, Legislative Document, (1939) No. 65, p. 209.) It described *City of New York* v. *Bronx County Trust Co., supra,* as containing a "dictum apparently

rejecting'' the rule of the Fowler case, and observed that appellant's brief in the City of New York case had cited the Fowler case. (Report of the Law Revision Commission, *supra*, p. 287.) However, the commission noted the later decision of the Supreme Court, Appellate Division, in *Hansen* v. *Brooklyn Trust Co., supra.* By reason thereof, the commission felt that legislative clarification was indicated. This does not militate against our view that without legislative remedy the New York Court of Appeals, the highest court of the state, would not have followed the Fowler case, and, in consequence thereof, we agree with the conclusion of the trial court that at the time of the New York Perkins litigation the Fowler case was no longer the law of New York.

Plaintiff places some reliance on a statutory provision adopted in 1928 as abolishing the rule of the Fowler case in New York if it continued to be the law up to that date. The provision, a part of the Uniform Joint Obligations Act (9 U.L.A., p. 429, § 2), is as follows: ''A judgment against one or more of several obligors, or against one or more of joint, or of joint and several obligors shall not discharge a co-obligor who was not a party to the proceeding wherein the judgment was rendered.'' (Laws of New York, (1928) p. 1765.) According to Mr. Williston, who drafted the Uniform Act, the prime purpose of the provision was to do away with the rule prevailing in some states that a judgment against a joint obligor discharged co-obligors not joined as defendants. (2 Williston on Contracts, (Rev. ed.) p. 985, § 336A.) We are not entirely certain that this provision was intended to apply to a situation involving inconsistent remedies. Under such circumstances, we prefer to rest our decision on the ground set forth above, that under the law of New York at the time of the Perkins litigation the remedy against Mr. Perkins was not inconsistent with an action against appellant; that the New York judgment against Mr. Perkins does not bar the present suit.

It therefore follows that, whether the California or New York law applies, there has been no election of remedies in the present case.

WAS MR. PERKINS AN INDISPENSABLE PARTY TO THIS ACTION?
DID THE TRIAL COURT ERR IN REFUSING TO DECLINE JURISDICTION OR IN REFUSING TO GRANT A CONTINUANCE?

Defendant next urges that without Mr. Perkins, one of the

claimants to the dividends, as a party, the court had no jurisdiction to proceed. There can be no doubt, of course, that if Mr. Perkins was an indispensable party, failure to make him a party affects the jurisdiction of the court, and that, although the point was not raised below, it may be now urged on appeal. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 [73 P.2d 1163]; *Ambassador Petroleum Co.* v. *Superior Court,* 208 Cal. 667 [284 P. 445].) The argument proceeds on the theory that because Mr. Perkins is not a party to this action, the judgment herein is not binding upon him, and he may lawfully litigate the issue in the Philippine courts or elsewhere. In view of the conclusions already set forth, the unsoundness of that argument is apparent. The basic premises of this opinion are that the New York judgment is res judicata in this proceeding, and that this court, as well as the Philippine courts, must give full faith and credit to that judgment. If Mr. Perkins ever sues defendant for these dividends in the Philippines or elsewhere, the New York judgment and the present California judgment will be res judicata, and if the court where suit is instituted fails to give full faith and credit to these judgments, it can be compelled to do so by appropriate proceedings. If these premises are wrong, defendant has a complete remedy by appealing this case to the United States Supreme Court. Under our analysis, defendant will be completely protected from Mr. Perkins by the New York and California judgments by payment to Mrs. Perkins. Mr. Perkins was not, therefore, a necessary or indispensable party to this litigation.

Prior, during and after trial, defendant repeatedly moved the trial court to refuse jurisdiction or to continue the case until the then pending action in the Philippines had been tried. These motions were denied. Defendant now urges that it was an abuse of discretion, as a matter of law, to refuse to continue the California case until the Philippine action, filed some six months after the present action, had been tried. These motions were predicated upon the contention that, inasmuch as the corporation is a Philippine corporation, inasmuch as the Philippine court secured jurisdiction over all the interested parties, and, inasmuch, according to defendant, Philippine law is controlling, the Philippine court is best able to decide this controversy. Aside from legal considerations, it is obvious, because of war conditions, that there

are at present no courts in the Philippines that can try this case. Although we know this to be but a temporary condition, it is one that indicates the hardship that would be imposed on plaintiff were it to be now held that the cause should be continued until the trial of the Philippine action.

Defendant's argument is based, in part, upon the doctrine of *"forum non conveniens"* (*Cuba R. R. Co.* v. *Crosby*, 222 U.S. 473 [32 S.Ct. 132, 56 L.Ed. 274]; *Diaz* v. *Gonzalez y Lugo*, 261 U.S. 102 [43 S.Ct. 286, 67 L.Ed. 550]; *Jackson & Sons* v. *Lumbermen's Mut. Casualty Co.*, 86 N.H. 341 [168 A. 895]) that is, upon the ground that this case can be more conveniently tried by a Philippine court. Further, it is urged, the courts of California should have refused jurisdiction because the action involves the internal affairs of a Philippine corporation. (*Rogers* v. *Guaranty Trust Co.*, 288 U.S. 123 [53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720].) Defendant likewise urges that a continuance will normally be granted when there is another action involving the same parties and the same subject matter in another jurisdiction whose laws are applicable (*Moore* v. *Maryland Casualty Co.*, 74 N.H. 47 [64 A. 1099]); or when the court in the other jurisdiction is the only court that has jurisdiction of all the parties (*Oppenheimer* v. *Carabaya Rubber & Nav. Co.*, 145 App.Div. 830 [130 N.Y.S. 587]); or when the trial in the forum threatens the defendant with double liability.

None of these arguments is sound. There is no valid reason why the courts of California equally with the Philippine courts cannot settle this controversy. The trial court secured jurisdiction of the persons and subject matter. The action does not involve the internal affairs of a corporation. It is an action to recover dividends already declared. The only point involved is whether Mr. or Mrs. Perkins is entitled to the declared dividends, and that has been settled by the New York judgment. Under such circumstances, the case does not involve the internal affairs of a corporation. (*Westminster Nat. Bank* v. *New England Elec. Works*, 73 N.H. 465 [62 A. 971, 111 Am.St.Rep. 637, 3 L.R.A. N.S. 551]; *Citizens' Nat. Bank* v. *Consolidated Glass Co.*, 83 W.Va. 1 [97 S.E. 689]; *Williamson* v. *Missouri-Kansas Pipe Line Co.*, 56 F.2d 503.)

It must be remembered that the California action was filed over six months before the Philippine action. For reasons already stated, there is no danger to defendant of double liability. Mr. Perkins' title to the stock, and rights to divi-

dends, were terminated by the New York judgment. The question involved has nothing to do with Philippine law—it is simply whether the New York judgment is res judicata. The courts of this state can determine that as easily as the Philippine courts.

It follows that these motions were addressed to the sound discretion of the trial court and their denial was well within its discretionary powers.

## INTEREST.

 The judgment in favor of plaintiff includes interest in the amount of $77,473.88, being interest on each dividend from the date declared. Defendant contends that plaintiff is not entitled to interest on any of these dividends.

As to all the dividends, defendant urges that no liability attached to it for interest because of the lack of a proper demand. It is the general rule that dividends do not bear interest until demand for payment. (18 C.J.S., p. 1139, § 472; 11 Fletcher, Cyclopedia Corporations (perm. ed.) p. 921, § 5372; 7 Thompson, Corporations, (3d ed.) p. 246, § 5366.) Plaintiff wrote letters to defendant corporation on April 1, 1930, June 27, 1930, and December 19, 1930, demanding payment of dividends, but defendant contends that each demand cast upon defendant liability only for interest on the dividend declared next after the demand; that is, that successive demands were required to be made for each dividend to charge defendant with liability for interest. From the tenor of defendant's replies to plaintiff's letters, it appears that further demands would have been useless. The law does not require useless acts. A demand is not required where it is plain that it would be unavailing. (See cases cited 1 Cal. Jur., p. 343, § 30.)

 On April 1, 1930, counsel for Mrs. Perkins wrote to defendant demanding that the dividend check for the March 31, 1930, dividend, which had been delivered to Mr. Perkins, be restored to her. On June 27, 1930, she wrote to defendant, renewing her demand of April 1st, which was based on her claim of ownership of the stock as her separate property. In her letter of December 19, 1930, she reasserted her absolute ownership and demanded that dividends declared since April 1, 1930, and "all dividends which may hereafter accrue" be paid direct to her.

The corporation, in a letter of June 30, 1930, in reply to

the second of the above letters, wrote that it was compelled to accede to the demands of Mr. Perkins, in view of its opinion that, even if the stock was her separate property, her husband, under Philippine law, was entitled to the dividends. In a letter of December 22, 1930, which Hausermann wrote on behalf of the corporation, he informed plaintiff that he was compelled to advise her that the corporation was unable to comply with her demands. Under such circumstances, it is obvious that defendant may not avoid liability for interest to plaintiff on the ground that there was no proper demand. The demands made, when considered with defendant's replies thereto, dispensed with the need of further demands.

It cannot be successfully urged that the mere existence of a dispute between Mr. and Mrs. Perkins, at least in the absence of an impounding of the dividends, would relieve the defendant of liability for interest. That has been definitely settled in this state. In *Conner* v. *Bank of Bakersfield,* 183 Cal. 199 [190 P. 801], there were conflicting claims to a check certified by defendant bank, which brought an interpleader action. The successful claimant in the interpleader suit thereafter sued the bank for interest on the check from the date of his demand on the bank to the date he received payment of the judgment. The trial court held that the plaintiff was entitled to interest only from the date of his demand to the date of the deposit of the amount of the check in court in the interpleader action. Both the bank and the plaintiff appealed, the bank contending that it was not liable for interest in any amount; the plaintiff, that it was entitled to interest to the date of payment. The Supreme Court, in the cited decision, affirmed the judgment, thus sustaining the liability of the bank for interest prior to the date it deposited the fund in court.

As to the dividends paid to Mr. Perkins from May 31, 1930, to April 5, 1934, the only contention made by defendant is that there was not a proper demand. From what has been already said, it is clear that defendant is liable for interest on those dividends. As to the balance of the dividends, defendant makes a separate contention concerning the dividends paid to Mr. Perkins and his transferees between April 5, 1934 (the date the Philippine Court ordered the defendant to transfer the stock to the name of Mr. Perkins), and May 27, 1937 (the date the company received notice of the decision of the New York Court of Appeals), and also makes a separate con-

tention concerning the dividends declared since May 27, 1937.

For purposes of convenience, the question of liability for interest on dividends declared since notice of the New York decision will be discussed first. As to these dividends, the evidence shows that on May 26, 1937, immediately after the decision of the New York Court of Appeals, counsel for Mrs. Perkins cabled defendant instructing it "to hold all dividends." The company replied by cablegram that it would "hold dividends and refuse transfer shares until conflict between New York courts and Philippine courts removed." The company paid out no dividends on stock in Mr. Perkins' name after receipt of the cablegram. The trial court found "that in compliance with said request in said telegram of May 26, 1937, defendant, since May 27, 1937, has held and impounded all dividends accrued upon all shares of its stock standing in the name of Eugene Arthur Perkins on said date and upon all additional shares issued by virtue of stock dividends thereon."

The present action was commenced on January 18, 1938, before entry in February, 1938, of the judgment directed to be entered in the trial court by the New York Court of Appeals. The plaintiff's instruction to the defendant "to hold all dividends" was never revoked. Thus, as already held, although there had been a proper demand for the dividends, the situation is one where that demand was revoked by the cable of May 26, 1937, and on that date there was substituted a demand to hold the dividends. This last demand was complied with. It is obvious that the plaintiff should not recover from defendant interest on dividends on the theory that the defendant had not paid dividends to her, when the company, as found by the trial court, was withholding such dividends at her direction. (§ 3287, Civ. Code.) In view of plaintiff's unrevoked direction to hold dividends, the filing of the complaint cannot be considered a demand for immediate payment, but, rather, for payment as of the rendition of judgment. The award of interest must, therefore, be reduced insofar as it includes interest on dividends declared after May 26, 1937.

As to the dividends declared by defendant and paid by it to Mr. Perkins or his transferees from April 5, 1934, to May 26, 1937, defendant urges that it cannot be charged interest for that period for the reason that, during that period, it acted under the compulsion of the Philippine decree of April

768

5, 1934. That decree, it will be remembered, commanded defendant to issue new certificates for the shares in the name of Mr. Perkins.

Defendant urges that its liability for interest is to be determined by the Philippine law, and that by the Philippine decree it was prohibited from paying these dividends to Mrs. Perkins. The decree upon which reliance is now placed was held by the New York court to be void for lack of jurisdiction. That determination is res judicata in this proceeding, and, as already held, entitled to full faith and credit not only in this state, but also in the Philippines.

There is a conflict of authority as to whether liability for interest and the rate of interest are to be determined by the law of the forum or the law of some other place, as where the contract was made or is to be performed. (McCormick, Damages, (Hornbook Series, 1935) § 2, pp. 8-10; 2 Beale, Conflict of Laws, (1935) § 418.2, p. 1335; note, 78 A.L.R. 1047; 25 C.J.S. 463, § 4b; Restatement, Conflict of Laws, p. 498, § 418.)

The rule in California is that the law of the forum governs. (*Nesbit* v. *MacDonald,* 203 Cal. 219, 223 [263 P. 1007]; see, also, *Bank of United States* v. *Foreman,* 102 Cal.App. 756, 766 [283 P. 874], where without discussion interest at the rate of the forum was allowed.) It may be said in the present case, as it was in *Nesbit* v. *MacDonald, supra,* that even if the law of the forum is not controlling, in the absence of proof of the applicable foreign law it will be presumed to be the same as the law of the forum. There is no proof here that the law of the Philippines differs from our law as to the effect of the Philippine decree of April 5, 1934, on defendant's liability for interest. In fact, defendant itself cites a California code section (§ 3287, Civ. Code) for its argument that the compulsion of that decree frees it from liability to plaintiff for interest on dividends paid after the decree. The section provides: ''Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.'' (Section 1875(3), Code of Civil Procedure, now provides that the courts take judicial notice of the laws of the several states of the United States and the interpretation

thereof by the highest court of appellate jurisdiction of such states, but this provision is not applicable to Philippine law, which is a matter of proof. *Wickersham* v. *Johnston,* 104 Cal. 407 [38 P. 89, 43 Am.St.Rep. 118]; 10 Cal.Jur., p. 703, § 29.)

Interest is allowed after default by nonpayment as part of the damages suffered by the party to whom payment is due. (§ 3302, Civ. Code; 8 Cal.Jur., p. 789, § 48; 25 C.J.S., p. 535, § 51; 30 Am.Jur., p. 6, § 2.) Damages are defined as compensation for detriment from the unlawful act or omission of another. It is well settled that where the defendant has been prevented from making payment by reason of a judgment, order, statute, or judicial process directing it to hold the amount due, there is no liability for interest. (*Stimson* v. *Dunham, Carrigan, Hayden Co.,* 146 Cal. 281 [79 P. 968]; *Ide* v. *Aetna Ins. Co.,* 232 Mass. 523 [122 N.E. 654]; *Boston Penny Savings Bank* v. *Boston & M.R.R.,* 244 Mass. 488 [138 N.E. 907]; *Gaston* v. *Shunk Plow Co.,* 161 Ga. 287 [130 S.E. 580]; *Mustard* v. *Union Nat. Bank,* 86 Me. 177 [29 A. 977]; McCormick, Damages, (Hornbook Series, 1935), p. 227, § 57a.)

A creditor is not entitled to interest during such time as the debtor is prevented by law from making payment. (§ 3287, Civ. Code.) This rule, however, has no application to adjudications that are void. The New York court held that the decree of April 5, 1934, was void, and in fraud of plaintiff's rights. The trial court in the present case found "that said order of April 5, 1934, was and is null and void and invalid in all respects and without legal force or efficiency of any kind, and made by said Manila court without any notice of any kind to said plaintiff, Idonah Slade Perkins, of the application therefor . . ." The evidence shows that defendant had full knowledge of the facts that rendered this adjudication void. It cannot be said that the defendant was "prevented" from making payment by any such void decree. The failure to pay plaintiff was not rendered lawful by such void decree, but, on the contrary, was an "unlawful omission" which entitles plaintiff to interest. We have been cited to no case from this state, from the Philippines, or elsewhere, to the effect that reliance on such a decree, under the circumstances here existing, would relieve the defendant from liability. It follows, therefore, that, whether California or

Philippine law applies, defendant is liable for such interest during this period.

Nor can it be successfully urged that plaintiff is estopped from urging this point. The defendant pleaded in its ninth defense that plaintiff was estopped by virtue of defendant's reliance on all the Philippine adjudications. On this issue, on competent evidence, the trial court found that none of the dividends were paid in good faith reliance upon the Philippine adjudications, because at all times defendant knew of plaintiff's claims that such adjudications were void.

From what has been said, it is apparent that the award of interest in the total sum of $77,473.88 should be reduced to the extent that it allows interest on dividends declared after May 26, 1937. The allowance, in other respects, is proper.

### OTHER POINTS RAISED BY DEFENDANT

*Statute of Limitations.*

Defendant further contends that recovery of part of the dividends paid Mr. Perkins is barred by the statute of limitations. It is the general rule that the statute of limitations of the forum applies. (16 Cal.Jur., p. 411, § 22, citing cases.) The parties concede that in this case express statutes of this state make the Philippine statute controlling. (§§ 351, 361, Code Civ. Proc.; see, *Cvecich* v. *Giardino,* 37 Cal.App.2d 394 [99 P.2d 573].)

In the Philippines the applicable statute of limitations is found in section 43 of their Code of Civil Procedure. It provides that, on an action upon an agreement, contract, or promise in writing, the action must be brought within ten years (subd. 1) ; that the period on a contract not in writing, whether express or implied, is six years (subd. 2) ; and that the period for an action for recovery of personal property, or for an injury to the rights of the plaintiff not arising on contract, and not otherwise provided for, is four years (subd. 3). Defendant contends that the six-year period for actions on contracts not in writing applies, or if not, that the action is for an injury not arising on contract, as to which the four-year period is fixed. Since this action was filed January 18, 1938, application of a four-year period would bar recovery of dividends declared prior to January 18, 1934, application of a six-year period, all dividends declared prior to January 18, 1932. If a ten-year period applies, the plaintiff is entitled to full recovery, since the first dividend paid Mr. Per-

kins was that of March 31, 1930. The trial court held that section 43 of the Code of Civil Procedure of the Philippine Islands was controlling, and that no part of the various causes of action pleaded by plaintiff were barred by that section. Thus, the trial court held that the ten-year period provided in subd. 1 was controlling. With that conclusion we agree.

It has frequently been held that an action to recover a dividend is upon a contract or promise in writing where brought by the stockholder in whose favor the dividend is declared. The resolution and minutes of the corporation in such case constitute the writing which is the basis of liability. (18 C.J.S., § 472a, p. 1140; 11 Fletcher, Cyclopedia of Corporations, (perm. ed.) p. 915; *Winchester & Lexington Turnpike Co.* v. *Wickliffe's Adm'r*, 100 Ky. 531 [38 S.W. 866]; *Ball* v. *Peper Cotton Press Co.*, 141 Mo.App. 26 [121 S.W. 798].) But where the action is brought by one other than the person in whose favor the dividend was declared it has been held that the action is for a debt not evidenced in writing. (*Cavitt* v. *Amsler*, (Tex.Civ.App.) 242 S.W. 246.)

In the case herein, Hausermann, president of defendant, testified that the uniform practice of defendant was to declare dividends by resolution spread upon the minutes of the corporation. Mrs. Perkins was the stockholder of record until April 11, 1934, when the corporation issued a certificate in Mr. Perkins' name following the order of the Philippine court of April 5, 1934. All dividend checks prior to that date were made payable to Mrs. Perkins, although delivered to Mr. Perkins, who cashed them. In the absence of evidence to the contrary, it is to be presumed that the resolutions of defendant declaring the dividends either expressly declared the dividends in her name, or did so impliedly through declaring them in favor of stockholders of record as of a specified date. Under such circumstances, the action is upon ''an agreement, contract, or promise in writing'' within the meaning of the Philippine statute, and no part of the recovery sought is barred by limitation.

*Motion for Summary Judgment.*

Defendant further objects to the granting of plaintiff's motion for summary judgment as to impounded dividends in the amount of $33,350.80. The exact grounds of the objections are not clear. The motion was made before trial under

section 437c, Code of Civil Procedure, which provides for such a motion "if it is claimed that there is no defense to the action or that the action has no merit." In the case herein plaintiff moved for summary judgment not only for the amount of impounded dividends, but for all dividends declared since December 19, 1930, on the theory that the defense was insubstantial by reason of the New York judgment. The motion was granted only as to the dividends impounded prior to the motion for summary judgment.

Under § 437c if the motion is granted as to only part of the claim, no judgment for such part is entered prior to trial as to the remainder, but the judgment when finally entered shall award plaintiff the amount of his claim as established by the order in the proceedings for summary judgment.

The trial herein was, in effect, conducted as if the proceedings for summary judgment had not been had, before a different judge than the one who heard the motion for summary judgment. The defendant was not precluded from making any defense as to its liability for impounded dividends by reason of the order for summary judgment as to those dividends. The findings made, on the basis of proceedings at the trial, and independently of the order for summary judgment, cover all issues relevant to liability for such dividends. The findings and conclusions expressly provide that the judgment includes the sum for which summary judgment was entered. In the circumstances, regardless of the propriety of the proceedings for summary judgment, defendant was not prejudiced thereby. If the case was not a proper one for such proceedings, or if the proceedings were irregular in any respect, which we do not decide, defendant's right was to a trial as to its liability for impounded dividends in the regular course of procedure, and this it has had.

*Supplemental Complaints.*

Defendant contends that the court erred in permitting plaintiff to recover dividends declared after the commencement of the present action upon supplemental pleadings. The complaint was filed January 18, 1938, for dividends declared between March 31, 1930, and December 20, 1937. The court, over the objection of defendant, permitted plaintiff to file a supplemental complaint on January 16, 1939, for dividends declared in 1938, and thereafter to file two further supplemental complaints, one for 1939 dividends and the other for the dividend declared in March, 1940. Defendant contends

that this was error for the reason that a new cause of action may not be set up by supplemental complaint. In defendant's view, each dividend gives rise to a separate cause of action. (11 Fletcher, Cyclopedia of Corporations, (perm. ed.) p. 911, § 5365.) There is no merit to this contention.

Section 464, Code of Civil Procedure, provides: "The plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint or answer, alleging facts material to the case occurring after the former complaint or answer."

In *Brix* v. *Peoples Mut. Life Ins. Co.*, 2 Cal.2d 446 [41 P.2d 537], the plaintiff brought action to recover monthly disability payments under an insurance policy. The Supreme Court held that the trial court should have permitted plaintiff to file a supplemental pleading to recover installments accruing between the filing of the complaint and the conclusion of the trial. The court said (p. 456) : "No good reason is offered why the plaintiff in such an action should not be permitted to litigate his claim to all installments which had accrued up to the date of trial, when defendant's liability for the payment of such installments has been made an issue by proper pleadings. The parties are all before the court. The issues have been presented by the pleadings, and if under the evidence, as was the case in the present action, the plaintiff has proven his right to recover for all installments accruing up to the date of the trial, we see no reason why he should not be permitted to do so. To deny him this right would be simply to send him out of court one day and compel him to return the next day to litigate the same matter that was before the court on the first day. Such a construction of the law is not in harmony with the spirit of our modern procedure which endeavors to simplify court proceedings and particularly to provide for the settlement in a single action of all controversies of the parties growing out of the same subject matter."

The defendant contends that the cited case is distinguishable in that there the recovery of payments accruing after filing of the complaint was not upon a new cause of action, but upon the same cause of action, that is, upon the contract of insurance. While it is the rule generally that a new cause of action may not be set up by supplemental complaint, that rule is not of inevitable application. Section 464 provides for setting up facts material to the "case" occurring after the

former complaint or answer. The plaintiff's right to recover dividends declared after December, 1937, depends on exactly the same issues as her right to recover dividends declared before that date. The "case" concerns her ownership of the stock, and her right to dividends arising therefrom. That dividends have been declared after the filing of the complaint, plaintiff's right to which depends on the same issues as her right to the dividends declared before the filing of the complaint is material to the "case" made by the complaint.

A somewhat similar situation was presented in *Strickler Co.* v. *Eisner,* 5 Cal.App.2d 441 [42 P.2d 1065]. That case involved an action to recover installments of rent under a lease. The court upheld the right of plaintiff to recover rent which accrued after filing of the complaint, upon a supplemental complaint therefor, even assuming that "each installment of rent as it became due constituted a new cause of action." (p. 444.) Under the authority of these cases there was no error in permitting the supplemental pleadings to be filed.

### CONCLUSION.

From what has heretofore been said, it follows that, except as to the item of interest on dividends declared since May 26, 1937, the trial court has properly disposed of all issues involved in this case. By reason of the improper inclusion of this item of interest, the judgment is erroneous in amount. Since the amount of this item is not fixed by the findings or judgment, the cause must be returned to the trial court for the purpose of permitting it to correct its findings and judgment in this regard. The judgment appealed from is reversed insofar as it includes this item of interest with directions to the trial court to modify its findings and judgment by deducting therefrom the amount of interest on dividends declared since May 26, 1937. In all other respects, the judgment is affirmed. Plaintiff to recover her costs on this appeal.

Ward, J., and Knight, J., concurred.

A petition for a rehearing was denied December 30, 1942. Knight, J., voted for a rehearing. The following opinions were thereupon rendered:

PETERS, P. J.—We believe the petition for rehearing must be denied. The complete answer to the contentions

made in the petition for rehearing and in the special opinion of Mr. Justice Knight in voting for a rehearing, is that the trial court expressly found, and the finding is supported, that when every payment was made to Mr. Perkins ''defendant knew that plaintiff was claiming to own the said shares of stock upon which the dividend was issued, as her separate property, and that she was claiming that her husband had no interest therein or right of control thereover.'' If the company had that knowledge it could not, as a matter of law, have paid any sums to Mr. Perkins in good faith.

The petition for rehearing is denied.

Ward, J., concurred.

KNIGHT, J., Dissenting.—It is my conclusion that the defendant's petition for rehearing should be granted in order to reconsider that portion of our decision dealing with the question of the application of the defenses of estoppel and election of remedies, insofar as those defenses affect the defendant company's liability for the payment to plaintiff of the amount of the dividends which admittedly said company has already paid to plaintiff's husband. Furthermore, our decision affirming that portion of the trial court's judgment is based largely upon the assumption that the trial court found that in making such payments said company did not act ''in good faith reliance on any of the Philippine adjudications, or transactions''; whereas as pointed out by the petition for rehearing the record does not support that assumption. The trial court's decision contains no finding that in making said payments the company did not act in good faith, nor did it find that it did not rely on the Philippine judgments and decrees. In fact, so far as the record shows, plaintiff has never charged in any of her pleadings that said company did not act in good faith in making said payments or that it did not rely upon the validity of the Philippine adjudications.

For the reasons stated it is my opinion that a rehearing should be granted.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1943.